## City of Corbin v. Benton.

(Decided January 10, 1913.)

Appeal from Whitley Circuit Court.

1. Municipal Corporations—Streets—Defective or Dangerous Condition—Personal Injury—Action for Damages—*Res Ipsa Loquitur.*—In an action for damages for personal injuries alleged to have resulted from dangerous and defective condition of the streets of a city, the doctrine of *res ipsa loquitur* does not apply.

2. Municipal Corporations—Streets—Defective or Dangerous Condition—Personal Injury—Action for Damages—Peremptory Instruction.—In an action for damages against a city for personal injuries alleged to have resulted from the dangerous or defective condition of the streets, evidence examined and held insufficient to authorize a submission of the case to the jury.

M. A. GRAY and STEPHENS & STEELY, for appellant.

R. S. ROSE, P. W. HARDIN, S. S. LAWSON, and P. H. SPENCER, for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

Plaintiff, Effie Benton, while crossing one of the streets in the city of Corbin, fell into a ditch or culvert and was injured. She brought this action against defendant, the city of Corbin, to recover damages. From a verdict and judgment in her favor for $200, the city of Corbin appeals.

A reversal is asked because of the alleged error of the trial court in refusing to direct a verdict in favor of the defendant. The determination of this question requires a brief statement of the facts.

The accident happened at the crossing of Kentucky and Monroe streets. The pavements at that point are concrete, while the regular street crossing is made of two rows of stone, running parallel, each stone being 12 or 15 inches in width. Upon the opposite side of the street from where plaintiff was injured the pavement is higher, and some stone steps are built to reach the pavement. At the time of her injury plaintiff was not using the regular crossing, but was walking over a culvert, which is frequently used by the traveling public as a crossing. This culvert runs diagonally across the street, and was built for the purpose of conducting a small branch under the street. The culvert is 22 inches wide and 18 inches deep. Its sides are walled with stone, and it is covered with flagstones three or more inches in thickness. At the place of the accident these flagstones are laid against the concrete pavement, the top of the flagstones being six inches below the pavement. In the center of the street where the roadway is built the flagstones are covered with dirt. At each end of the culvert, next to the sidewalk, there is no dirt over the flagstones. Plaintiff says that she had left the regular crossing and was proceeding along the culvert for the purpose of crossing over from one street to the other. It was in the day time, and she was pushing her baby in a go-cart. She had just placed the front wheels of the go-cart upon the sidewalk, which was higher than the street, and was about to put the back wheels up when she stepped on the second stone from the pavement, and it slipped and she went into the ditch, causing her certain injuries which it is not necessary to describe. The stone was broken. She had been using the crossing off and on for about six years, and, so far as she noticed, the

appearance and condition of the stone covering the culvert were the same as they had always been. Plaintiff's sister, after describing plaintiff's injuries, testified that she had frequently passed over the crossing where the accident occurred. She had never noticed anything wrong with the stone. The danger was not such as you could detect in crossing over. This witness also stated that the stone was 22 or 23 inches long, and it rested along the side of the culvert about two inches where it slipped.

According to the evidence for the defendant, as given by its mayor, its city attorney and its street commissioner, the stone which broke and fell into the culvert was three feet and three inches in length, ten inches wide at one end and 15 inches wide at the other. Where the stone broke, it was 12 inches wide. It was three inches thick at one end and three and one-eighth inches thick at the other. In the middle it was three inches thick. The stone was freshly broken. None of the officers of the city had any knowledge of any defect in the stone or of its being negligently placed or being out of place, nor was there anything in its appearance to indicate any of these conditions.

We have frequently held that a municipality is not an insurer against accidents to persons using its thoroughfares. It is not liable for injuries caused by defective streets in the absence of actual notice of such defect, or unless the defect has existed so long that notice or knowledge thereof should be imputed to the city. But notice should not be imputed where the defects are of recent origin, and particularly where they are concealed in any way. Whilst generally the jury should determine, as a question of fact, whether a city has such notice, yet where the facts are undisputed, and but one reasonable inference can be drawn from them, the question is one for the court to decide. Bell v. City of Henderson, 24 Ky. L. Rep. 2435; Hazelrigg v. Board of Councilmen of Frankfort, 29 Ky. L. Rep., 208; City of Harrodsburg v. Sallee, 142 Ky., 829. Counsel for plaintiff, however, insist that, under the rule laid down in the case of Board of Councilmen of Frankfort v. Jennie Buttimer, 146 Ky. 815, the doctrine of notice has no application to a case where the city itself places an obstruction in the street, or negligently constructs the street so as to render it dangerous for public travel. This is true, but no such case is here presented. It is admitted that there is no

positive evidence of negligence on the part of the city. It is not shown that the flagstone was in any respect insufficient for the purpose for which it was used. No witness testifies that it was defective, or that it was improperly placed. On the contrary, the evidence for plaintiff is to the effect that there was nothing in the condition of the stone to indicate that it was dangerous. Recognizing this fact, counsel for plaintiff contend that we should apply the doctrine of *res ipsa loquitur*. That doctrine, briefly stated, is: Where the thing which causes the injury is shown to be under the management or control of the defendant or its servants, and the accident is such as in the ordinary course of things does not happen if those who have the management or control use proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from want of care. Shinn Glove Co. v. Sanders, 147 Ky., 349; Chenall v. Palmer Brick Co., 43 S. E. 443, 117 Ga., 106. Or, as stated by another court, "The maxim is also in part based on the consideration that where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present." Griffin v. Manice, 166 N. Y., 188, 59 N. E., 925, 52 L. R. A., 922, 82 Am. St. Rep., 630. While a city may construct, reconstruct and repair its streets, and may in other ways exercise control over its streets, yet there is no such management or control on its part as will justify the application of the doctrine of *res ipsa loquitur*. Streets are not only built and maintained for the use of, but are in constant use by, the traveling public. Being in constant use by the traveling public, streets which are properly constructed and are in every respect suitable for public travel may immediately become defective or dangerous from such constant use. Indeed, in the majority of cases, the probability of their becoming defective or dangerous from their continuous use by the public is much greater than that growing out of their defective or dangerous construction, reconstruction or repair. To say, therefore, that the breaking or slipping of a stone, shown to be in every way sufficient for the purpose of covering a culvert, is of itself evidence of its insufficiency or negligent placement, when, as a matter of fact, its condition or improper position may have been due to its being struck

by a vehicle a few minutes before the accident occurred, would often impose upon a city a liability for an accident when the city was not only free from negligence, but had used the utmost care to maintain its streets in a reasonably safe condition for public travel. For this reason, we conclude that the doctrine of *res ipsa loquitur* should not be applied in cases of personal injury growing out of the dangerous and defective condition of the streets of a city. There being no evidence of negligent construction by the city, it follows that the doctrine of notice applies, and there being no evidence that the city or its officers knew of the defective condition or improper position, even if such was the case of the flagstone, or by the exercise of ordinary care could have known of it in time to remedy the danger, it follows that the trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for new trial consistent with this opinion.