## Town of Elsmere v. Tanner.

(Decided May 5, 1914.)

### Appeal from Kenton Circuit Court
### (Criminal, Common Law and Equity).

1. Municipal Corporations—Streets—Sidewalks—Duty in Respect To. Cities and towns are under a duty to exercise ordinary care to keep their streets and sidewalks and public places in a reasonably safe condition for public travel by persons exercising ordinary care for their own safety.

2. Streets—Sidewalks—Barriers for Their Protection.—Where a street or sidewalk is built on an excavation, or ravine, or watercourse, or on a high, steep embankment, or at a place so dangerous that barriers should be erected to prevent a false step or movement from causing injury, municipalities are under a duty to protect such places by barriers or guards.

3. Municipal Corporations—Streets—Sidewalks.—A city is not an insurer of the safety of persons who travel its streets or sidewalks, and is not to be held liable in damages for every injury that happens to a traveler. When a city has provided a good, safe, smooth sidewalk, of ample width for the accommodation of the public, those who use it must walk on it or else take the

consequences of their carelessness, unless it is built in an unsafe or dangerous place.

4.   Streets—Sidewalks—Facts Showing Sidewalk To Be Safe.—A smooth concrete sidewalk, five feet wide, built on an embankment two feet high, with a sloping bank 3½ feet from the sidewalk to the base, the surface of the ground at the concrete being four inches below the surface of the sidewalk, was reasonably safe, and a person who, in walking on the sidewalk, stepped over the edge of it and lost his balance and fell, was not entitled to recover damages for the injuries sustained.

5.   Instructions—Trial—Taking Case from Jury.—Courts are reluctant to interfere with the verdict of a properly instructed jury on a disputed issue of fact or to take a case from a jury, but where on the facts there is not room for reasonable difference of opinion as to the rights of the parties, the trial court should rule the case as a matter of law.

HALL & ADAMS for appellant.

RICHARD G. WILLIAMS, O. M. ROGERS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Mrs. Tanner, brought suit against the appellant town of Elsmere to recover damages for personal injuries alleged to have been sustained by the negligence of the town in failing to maintain its sidewalks in reasonably safe condition for public travel.    After the issues had been made up, the case went to trial before a jury and there was a judgment in favor of Mrs. Tanner for $238.00.   On this appeal by the town the only ground relied on for reversal is that the trial court should have directed a verdict for the town.

Elsmere is a town of the sixth class and was under a duty, as are all other towns and cities in the state, to exercise ordinary care to keep its streets and sidewalks and public places in reasonably safe condition for public travel by persons exercising ordinary care for their own safety, and so if the town failed to perform the duty imposed, and Mrs. Tanner was exercising ordinary care for her own safety, there is no reason for disturbing the judgment.

The town, a few years ago, constructed, or had constructed, a concrete sidewalk five feet wide.   The surface of this sidewalk was smooth, and there is no complaint that any part of the sidewalk proper was not in good condition.   The sidewalk at the place of the accident was built on an embankment about two feet higher than the natural surface of the ground of the adjacent

property owner. The embankment on which the sidewalk was built sloped from the concrete to the surface of the ground of the abutting owner, the distance from the concrete to the base of the slope being about 3½ feet, and the embankment immediately at the edge of the concrete lacked about four inches of being flush with the surface of the sidewalk. The town maintained no street light at this place, but the moon was shining and the surface of the concrete pavement being almost perfectly white, any person exercising ordinary care for his own safety could easily see the sidewalk, as its white surface plainly distinguished it from the grass and ground on the side.

Mrs. Tanner and two other persons were walking side by side on this sidewalk, Mrs. Tanner being on the inside, or the side next to the lot. While thus walking, she, in some way, stepped over the edge of the sidewalk with one foot, and as the surface of the ground immediately at the edge of the sidewalk was about four inches below the surface of the sidewalk, she lost her balance and fell or rolled down the embankment. If the ground had been level at this place and the sidewalk had been built four inches above the surface of the ground, and Mrs. Tanner in walking along had stepped with one foot over the edge of the sidewalk, she would probably have lost her balance and fallen exactly as she did lose her balance and fall on the occasion in question. It would appear that the fall she received was due to the fact that when she stepped with one foot over the edge of the sidewalk at a place where the surface of the sidewalk was four inches above the adjacent ground, she lost her balance, and when she lost her balance in this way she fell. It happened that as the sidewalk was on an embankment about two feet high she rolled down the sloping sides to the base, a distance of about 3½ feet; but it was the initial fall that caused the injury and not the rolling down the bank that followed the fall. Looking at the matter in this way, the question whether the town was negligent or not presents itself in two aspects; one, as relates to its failure to make the sidewalk so that its surface would be level with the adjacent ground; and the other, as relates to its duty to have barriers on account of the fact that the sidewalk was built on the embankment that we have described.

It is at once apparent that the sidewalk was not built in a dangerous or unsafe place. The surroundings were

not calculated to make it any more hazardous than ordinary sidewalks. It cannot be said that a sidewalk built on an elevation two feet high, with side banks gradually sloping from the sidewalk a distance of 3½ feet, is a dangerous place or such a place as would put upon the town, in the exericse of ordinary care to make it reasonably safe for public travel, the duty of erecting barriers to keep pedestrians from stepping off the sidewalk. Nor do we think the fact that the surface of the sidewalk was about four inches above the level of the sloping bank where it touched this sidewalk manifested a failure on the part of the city to exercise the required degree of care. There are sidewalks to be seen everywhere, especially in towns and small cities, the surface of which is as much as four inches above the ground immediately by the side of the sidewalk. There are great numbers of other sidewalks built on slight embankments with sloping sides, and if towns and cities were required to erect barriers on the side of every sidewalk that was built on a slight elevation, almost every town in the state would be disfigured by unsightly barriers erected alongside smooth and wide sidewalks built in safe places for use by persons exercising ordinary care for their own safety.

Likewise, if towns and cities were obliged to have the surface of the sidewalk level with the surface of the adjacent ground, so that persons walking on the sidewalk might step out on the ground without receiving a jar or fall, there would not be, measured by this standard, many sidewalks reasonably safe for public travel. There are few sidewalks alongside of which surface sewers are not constructed, and, as a rule, the face of the sidewalk abutting on the sewer is from four to ten inches higher than the bottom of the sewer, and the fall, from the surface of the sidewalk to the bottom of the sewer, perpendicular; yet it would hardly be contended that if a person walking on a sidewalk with a surface sewer besides it should walk too close to the edge of the sidewalk and make a mis-step that would cause him to lose his balance and fall into the sewer, that he could recover damages on the ground that the city had not exercised ordinary care to keep its sidewalks in good repair.

A city is not the insurer of the safety of persons who travel its streets or sidewalks, and is not to be held liable in damages for every injury that may befall a

traveler who through thoughtlessness or negligence meets with some accident. It often happens that people stumble or slip and fall and hurt themselves while walking in safe places, and no amount of care or diligence on the part of a city or town would enable it to prevent accidents of this sort. They happen every day in the year, to young as well as old, and strong as well as weak, and if cities were required to insure the limbs and life of every person who happened to get hurt on its streets, they would soon be bankrupted by recoveries in damage suits.

If, under the facts of this case, towns could be held liable, there would scarcely be any limitation upon their liability, and in almost every instance that can be imagined a town or city might be subjected to damages where an injury was received by any one using its streets.

When a city has provided a good, safe, smooth sidewalk of ample width for the accommodation of the public, those who use it must walk on it, or, if they carelessly or thoughtlessly step off, must take the consequences of the carelessness, unless the sidewalk is built in an unsafe or dangerous place, as, for example, on an excavation, or ravine, or water course, or on a high, steep embankment, or at a place so dangerous as that barriers should be erected to prevent a false step or movement from causing serious injury. Of course there are situations where a barrier or protection of some sort by the side of a sidewalk might be necessary to fulfill the duty a city owes to travelers on its streets; but that the place here in question was not of this character, we think manifest. The conditions were not such as would cause any person of ordinary prudence to anticipate that a traveler, in the exercise of ordinary care, would receive injury. Dillon on Municipal Corporations, 5th Ed., section 1696.

In Damon v. Boston, 149 Mass., 147, the court said: "The danger which requires a railing must be of unusual character, such as bridges, declivities, excavations, steep banks or deep water. Spaces adjoining roads, streets and sidewalks, and unsuitable for travel, are often left open in both country and city; and a town is not bound to fence against them unless their condition is such as to expose travelers to unusual hazard." To the same effect is Shea v. Town of Whitman, 197 Mass., 374, 20 L. R. A. (n. s.), 980. In the note to this case in

the L. R. A. are cited a number of cases illustrating the duty cities and towns are under in respect to barriers.

In Beardsley v. City of Hartford, 50 Conn., 529, 47 Am. Rep., 677, there is found this statement of the duty of a city in respect to barriers: "The true test is not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger; but whether there is such a risk of a traveler, using ordinary care in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient."

It is strongly insisted, however, that, as the question whether the city exercised ordinary care to keep its sidewalk in this place in a reasonably safe condition, was submitted to the jury and the jury, by their verdict found that the town did not exercise this degree of care, we should not interfere with their finding on this issue of facts.

It has frequently been observed by this court that it is difficult if not wholly impracticable to attempt to lay down any hard and fast rule by which the liability or non-liability of a city for accidents caused by its alleged failure to keep its streets in reasonable condition for travel, may be measured, and, generally speaking, this condition has made it necessary to leave the settlement of the matter to the jury trying the case. But this often reiterated recognition of the right to have a jury pass on disputed issues of fact in cases like this does not mean that in every case that comes up the issues must be left to the jury, or that because a properly instructed jury find by their assessment of damages that a municipality was negligent, that their finding must be accepted as conclusive, or that a court having the right to review the facts may not reach a different conclusion from that reached by the jury or take the case from the jury. Of course in all cases like this we reasonably and naturally give great weight to the finding of a jury, and when there is reasonable ground for difference of opinion, under all the circumstances, we will not interfere with their finding upon disputed questions of fact or say that the case should not have been submitted to a jury. City of Louisville v. Haugh, 157 Ky., 643.

But, notwithstanding this reluctance of the courts to invade the field that has been set apart under our system of law as the province of the jury, cases now and then

arise in which the courts feel like exercising their discretion and authority to differ with the jury on the facts and to go so far as to say that the court should rule the issue as a matter of law, and this is one of them. Other instances in which this court has held that the case should be ruled as a matter of law are: City of Covington v. Belser, 137 Ky., 125; City of Lexington v. Cooper, 148 Ky., 17; City of Corbin v. Benton, 151 Ky., 483; East Tennessee Telephone Co. v. Parsons, 154 Ky., 801.

We do not think that on the facts stated there is reasonable ground for difference of opinion concerning the proposition that the city exercised ordinary care to keep the sidewalk in reasonably safe condition for travel. This being the measure of its duty, it is not liable for the accident that happened to Mrs. Tanner, and the motion for a peremptory instruction should have been sustained. If there is another trial and the evidence as to the condition of the sidewalk is substantially the same as it was on this trial, the court will direct a verdict for the defendant.

The judgment is reversed, with directions for a new trial in conformity with this opinion.