## City of Paducah v. Ivey's Administrator.

(Decided November 17, 1922.)

### Appeal from McCracken Circuit Court.

1. Municipal Corporations—Latent Defects in Sidewalks—Negligence.—A municipality is not an insurer against all defects in its streets and sidewalks, latent as well as patent, but its liability is for negligence, and it is not liable for any injuries resulting from latent defects in a sidewalk not due to faulty municipal work in the absence of actual notice thereof unless they could have been discovered and cured in time to have prevented the injury by ordinary care and diligence.

2. Municipal Corporations—Defects in Sidewalk—Notice.—Whether or not notice is to be imputed in a particular case depends not alone upon the character of the defect but is a question of fact depending upon all the facts and circumstances.

3. Municipal Corporations—Inspection of Sidewalks.—The fact the city was under no duty of inspecting the electric light post did not absolve it of a duty of reasonably inspecting its sidewalks, since it is upon this duty that the theory of imputed knowledge rests.

4. Municipal Corporations—Injury to Pedestrian from Defective Wiring Causing Death.—Where a pedestrian was electrocuted by coming in contact with an iron electric light post, due to defective wiring concealed inside thereof and it was shown that at different times for two months theretofore the posts had been sufficiently charged with electricity to shock persons coming in contact with it, the question of whether or not the city by the exercise of ordinary care could have discovered its dangerous and unsafe condition in time to have prevented the accident was for the jury.

5. Municipal Corporations—Notice to Officers.—Notice to a city policeman and market master was not notice to the city where such officers were not charged by law with the duty of correcting or reporting conditions observed by them.

6. Municipal Corporations—Notice of Defect in Electric Light Post. —Notice that an iron electric light post, which the city permits or suffers to be maintained on its sidewalk in the business district of the city, is sufficiently charged with electricity to shock persons touching it is notice that the post is in a dangerous and

unsafe condition if thereafter injury results to a pedestrian who happens to touch it, even though previously no one had been so injured.

7. Municipal Corporations—Defective Electric Light Post—Care Exercised by Officers.—It was not error to refer generally to the officers of the city "whose duty it was to look after the streets" without naming them in an instruction authorizing a recovery if such officers, exercising ordinary care, could have discovered the dangerous and unsafe condition of the post in time to have corrected it and prevented the injury.

ROSCOE REED for appellant.

HENDRICKS & BURNS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On August 28, 1917, appellee's intestate, a young man 21 years of age, while standing on the sidewalk near the corner of Second and Broadway streets in the city of Paducah conversing with friends, placed his hand on one of the iron posts which, supporting electric light globes, form a "white way" throughout the business section of the city. At the time he happened to be standing on an iron plate that covered a man-hole in the sidewalk, and he was electrocuted the instant his hand touched the iron post. His administrator instituted this action against the Paducah Electric Company and the city to recover damages for his death.

The electric company, primarily liable, paid the administrator $7,500.00 in settlement of its liability just before the case was called for trial; and, upon a trial against the city alone, the following verdict, complying with the form prescribed by the instructions, was returned:

"We, the jury, find for the plaintiff the sum of $10,-500.00, less $7,500.00, net $3,000.00."

From the judgment against it for $3,000.00 entered on the verdict, the city appeals, and for a reversal contends the court erred (1) in refusing to direct a verdict in its behalf, and (2) in an instruction given.

1. The claim that a verdict should have been directed for the city, as we construe counsel's brief, is based upon the contentions (a) that the defective wiring inside of the post, which it is conceded charged the post with electricity and caused decedent's death, was a latent defect of which the city had no actual notice; that the city was

under no duty of inspection, and that as a consequence knowledge can not be imputed to it; and (b) that in any event the evidence was insufficient to prove constructive knowledge that the post was dangerous and unsafe.

(a)   The court instructed the jury that there was no proof of actual notice to the city that the pole was dangerous or unsafe, and that the city was under no duty of inspecting it.   We shall assume that both these propositions are true, although both are vigorously attacked by counsel for plaintiff; and we might, we think, also concede that the dangerous condition of the post was due to a latent defect, without being forced to assent to counsel's conclusion of law that under such circumstances knowledge can not be imputed to the city.   No authority so holding is cited, we have not been able to find any, and feel sure there is none.   Not a single one of the cases or texts cited by counsel in support of this contention sustains it.   In fact the general rule as thus stated in 28 Cyc. 1394 is relied upon:

"A municipality is not an insurer against all defects, latent as well as patent, but its liability is for negligence; and injuries resulting from latent defects in a highway not due to faulty municipal work, *and* which could not have been discovered by ordinary care and diligence, do not give a right of action against the corporation."

This is, we are sure, an accurate statement of the general rule quite universally recognized and which has been followed by this court in many cases, including Bell v. Henderson, 74 S. W. 206, 24 Ky. L. R. 2434; Covington v. Asman, 68 S. W. 646, 24 Ky. L. R. 415; Canfield v. City of New Port, 73 S. W. 888, 24 Ky. L. R. A. 2213; Corbin v. Benton 151 Ky. 483, 152 S. W. 241, which are also relied upon by appellant.

Under this rule, as is stated immediately following its statement in Cyc., *supra,* some courts hold that notice is not imputable unless the defect is "so notorious as to be observable by all," but by far the larger number hold that the mere fact the defect was hidden and the city had no notice of it will not exempt the city from liability if the defect was of such a nature and had existed for such a length of time that reasonable caution on the part of the proper municipal authorities would have discovered it.   In several of the cases from this court mentioned above, we have held that notice should not be imputed where the defects are of recent origin, and particularly

where they are concealed in any way. But obviously this does not mean that where the defects are not of recent origin notice is not to be imputed simply because they are concealed from view by passers-by. The city's liability rests upon negligence, which is the absence of ordinary care; and even if a defect is not open and notorious to casual observers, a city in our judgment is yet bound to exercise ordinary care to know that its sidewalks are reasonably safe for use by pedestrians. Whether or not it has exercised this care in any case depends not solely upon the character of an existing danger, but upon all the circumstances as is clearly illustrated by the facts of this case.

In this case, although the defective wiring was completely concealed in so far as the sense of sight is concerned, the dangerous condition of the post resulting therefrom was neither of recent origin nor yet concealed to the sense of touch. Under these circumstances we hardly think the defect can be said to be latent; but, passing that interesting question, we are sure that the city is liable if by the exercise of ordinary care, freed of any duty of inspecting the post, its dangerous condition could have been discovered in time to have cured the defect and prevented the death of the decedent; and this is the only way in which the case was submitted to the jury.

The fact the city was not under a duty to inspect the post, as we have assumed, did not of course absolve it from the duty of reasonably inspecting its sidewalks, since it is upon this duty that the theory of imputed knowledge necessarily rests; and if a reasonable inspection of its sidewalks would have disclosed the dangerous condition of this post without any special inspection of it, in time to have prevented the injury, there can be no doubt under all of the authorities that knowledge of its dangerous condition is to be imputed to the city.

Whether or not this is true is a question of fact for the jury, unless upon the evidence there is no room for differences of opinion among reasonable men.

(b)   Plaintiff proved by some ten or twelve witnesses that at different times within two months before the accident they had received a shock by touching this post, or had seen others so shocked. The first of these occurrences was two months before the accident, the last but a few hours previous, with the others interspersed

throughout the intervening time. No one denies any of this evidence.

One of the witnesses was a city policeman, another the city market master, but neither of them was shown to have been charged by law with a duty of correcting or reporting conditions observed by them to the officers whose duty it was to look after the sidewalks, and the jury were instructed that notice to them was not notice to the city, as we think under the circumstances was proper. Louisville v. Lenehan, 149 Ky. 537, 149 S. W. 932, Ann. Cas. 1914B 164.

We mention this fact simply to show that officers as well as others who were not charged with a duty of looking after the safety of the city's streets and sidewalks had observed at different times for at least two months, and without "inspecting" the post, that it was sufficiently charged with electricity to shock persons touching it. Can it be said then as matter of law that if those charged with such duty had exercised ordinary care they could not have discovered that fact also within that length of time? We think not.

Counsel for the city even urges that the fact people were shocked by coming in contact with this pole but were not hurt up until about an hour before decedent touched it shows that previous to that time it was not dangerous, but this fact can avail him nothing, since obviously if the city knew or ought to have known the post was charged with electricity it was certainly negligence not to have immediately ascertained the cause and corrected it. Surely no reasonably prudent man would have done otherwise.

It is our opinion the court did not err in refusing to direct a verdict for the city.

2. The single objection to the instructions given is that it was error to refer generally to the officers "whose duty it was to look after the streets and sidewalks" without naming them in the instruction authorizing a recovery if the jury believed from the evidence that the post was dangerous and unsafe and that by exercise of ordinary care such officers could have discovered such condition in time to have remedied it and prevented decedent's death.

To begin with, these officers could not have been named, since it is not shown upon what officers the city had imposed such duties as it is required to do by ordi-

nance. Section 3235c-17, Ky. Stats. But what can it matter who these officers were or whether they were many or few; and how could it have enlightened or helped the jury or affected the decision of whether or not exercising ordinary care they, whatever their names or titles, ought to have discovered this post was a menace to pedestrians using the sidewalk in the business district of the city?

We are unable to discover any error in the record prejudicial to appellant's substantial rights, and the judgment is affirmed.