## City of Harlan v. Parsons.

(Decided March 7, 1924.)

### Appeal from Harlan Circuit Court.

1. Dedication—Acceptance Required; Long-Continued Use and Repair of Bridge Constitutes Acceptance.—The dedicator of a public highway and bridge may not impose the burden of its maintenance upon a municipality by the mere execution of a deed or by recording it; but, where there was long-continued use of a bridge by the public and repair by the municipality, there was a sufficient acceptance.

2. Bridges—Liable for Defect in Bridge Left by Independent Contractor in Making Repairs.—A city is liable for injuries to a pedestrian caused by defect in bridge, though the bridge was being repaired by an independent contractor who did not leave it in a reasonably safe condition, not because of negligence of the contractor, but because of city's failure to perform the duty imposed upon it by law.

3. Bridges—Contributory Negligence of Pedestrian Injured when Footbridge Gave Way Held for Jury.—In an action against a city

for injuries to a pedestrian caused by the giving away of a footbridge under repair, whether plaintiff was guilty of contributory negligence held for the jury.

4. Bridges—Whether Officers of City had Knowledge of Use of and Accepted the Defective Bridge Held for Jury.—In an action for injuries received when footbridge gave way, whether city's officers, agents, and servants had knowledge that the bridge was being thrown open for public travel following repairs, and thereby, temporarily accepted it for such purposes, though it was not entirely finished, held for the jury.

5. Bridges—City Liable for Injuries Caused by Giving Way of Footbridge, Even Though Maintenance a Governmental Function.— Where the delegated act to be performed by a municipality is an absolutely imposed one, it becomes liable to any one injured for its failure to exercise reasonable care and diligence to perform that duty, although it may be one which might be technically classified as a governmental function, and hence a city was liable for injuries to a pedestrian caused by the giving way of a footbridge over a river which it was under the duty to keep in a safe condition.

6. Bridges—Instruction as to Liability of City Erroneous as Assuming Knowledge of Public Use of Bridge and as Charging it with Knowledge of Certain Officers.—In an action for injuries to pedestrian occasioned by giving way of footbridge, an instruction making the city liable for the unsafe condition of the bridge if such unsafe condition was known by the city "or any of its officers or agents" held erroneous as assuming that the city had notice of the fact that the public was using the bridge during repairs, and took no precautionary steps to prevent such use, and also in charging the city with knowledge of officers or agents having no duty to look after the repairing of its highways.

7. Municipal Corporations—City Charged with Knowledge of Officers Required to Repair Highways.—A municipality was charged with notice of defect in highways to any officer or agent whose duty it was to report or make provision for the correction of the defect or to look after or control the making of repairs or removal of obstructions, but not to other officers or agents not charged with such duties.

8. Bridges—Instruction as to Exercise of Reasonable Diligence to Discover Defects in Bridge Held Required.—In an action for injuries to pedestrian occasioned by giving way of footbridge, instructions held erroneous where they omitted to state that although the jury might believe the bridge was in a dangerous condition, yet if it believed from the evidence that the city had exercised reasonable diligence to discover its defects and had failed to do so, it would not be liable.

9. Trial—Remark of Counsel in Argument as to the Law Held Erroneous.—In an action for injuries, it was error to decline to sustain objections to statement of plaintiff's counsel in argument that the jury could not find against plaintiff unless he would not have been injured but for his negligence "alone," and unless plaintiff's negligence was the "sole cause" of his injury.

10. Negligence—Contributory Negligence Defense Though Not Sole Cause of Injury.—Contributory negligence is a complete defense whether it was the sole or only a contributory cause of the injury.

11. Trial—Counsel has no Right to Misstate Instructions, and Court is Under Duty to Correct Statement.—Counsel, in discussing before the jury the law of the case as presented in the instructions, has no right to misstate them, and the court, upon objection, should promptly take such steps as are necessary to correct the statement and to remove its effect from the jury.

W. T. DAVIS and J. E. SAMPSON for appellant.

J. S. FORESTER and J. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Clover Fork river runs through the city of Harlan. Clover street, an old one on the west side of the river, runs to its west bank and opposite that point on the east side of the river, which is a newer part of the town. Water street runs to the east bank of the river. Many years ago J. L. Smith, who owned some land on the east side of the river, platted some of it into lots fronting on Water street on that side, which was but a continuation of the old Clover street, constructed across the river a suspension walkway supported by cables and rods, and he owned it and the people used it with his acquiescence and permission until May 3, 1915, when he and his wife, for an expressed consideration of one dollar, deeded it and the abutment on the east side of the river to the city of Harlan. The deed was recorded and, according to the testimony of practically all of the witnesses in the case, the city on one or more occasions improved the bridge, the *maintenance* of which by the city being expressed in the deed as a part of its consideration. In August 1921 the city entered into some kind of an arrangement, the exact terms of which is not clear from the proof, with one E. S. Gregory, to make certain repairs to the bridge and the preponderance of the evidence is to

the effect that he was not to construct a new bridge but to make certain necessary repairs to the old one.

On Sunday night, September 4, 1921, the appellee and plaintiff below, W. D. Parsons, was crossing the bridge on his way home from church when one of the cables supporting it broke and precipitated the bridge with the travelers on it to the bottom of the river, a distance of something near twenty-five feet, and severely injured plaintiff in his hip and other parts of his body, from the results of which he was confined for a considerable time in the hospital, and paid out a large sum in doctor's bills, medicine, etc.; and he filed this action against the city to recover his consequent damages which he placed in his petition at the sum of $12,067.00. The answer, as amended, controverted the allegations of the petition, pleaded contributory negligence and relied on the fact that Gregory was an independent contractor for whose negligent acts, if any, the city was not liable. Appropriate pleadings made the issues and upon trial there was a verdict in favor of plaintiff for the sum of $2,000.00, upon which judgment was rendered and the court overruled defendant's motion to set it aside and grant it a new trial, and it has appealed urging as reasons for a reversal (1), error of the court in overruling defendant's motion for a peremptory instruction made at the close of plaintiff's testimony and renewed at the close of all the testimony; (2), the city, in maintaining the bridge, was engaged in performing a governmental function and was not liable for its reasonably safe maintenance; (3), that Gregory was an independent contractor and on that account the city was not liable; (4), error of the court in instructing and in refusing to instruct the jury, and (5), improper and prejudicial remarks made by plaintiff's counsel to the jury in his closing argument.

It is insisted in support of the first reason: (a), that there was no competent testimony to show that the city had ever accepted the bridge; (b), that the relationship of contractor and independent contractor between the city and Gregory was shown and there was no evidence to prove the relationship of master and servant, and (c), that the evidence conclusively proved contributory negligence on the part of plaintiff.

In support of insistence (a), it is contended that the city never accepted *on its records* the deed executed by Smith and wife, and that there was no competent evi-

dence that it had done so by any act of maintenance of the bridge. But we do not find ourselves in accord with either of those contentions. It is true that a dedicator of a public highway may not impose the burden of its maintenance upon the municipality by the mere execution of a deed or by recording it, but long continued use of the thing conveyed as a part of or as a public highway by the public generally will raise a presumption of acceptance. However, in this case the proof shows positively that the city did repair the bridge a number of years before the accident and on August preceding, it actually employed Gregory to repair it. It would be a useless consumption of time to undertake to demonstrate from these facts that there was in law a sufficient acceptance of the bridge by the city. The cases cited and relied on are wholly devoid of any of the accepting facts or presumptions that are found in this case.

In support of insistence (b), the text in 19 R. C. L. 1140, and a number of cases, some of which are from this court, are relied on to show that a municipality is not liable to respond in damages for the negligent acts of its independent contractor, the same as applies to an individual employer; but in announcing that doctrine it is said that it is applicable "subject to certain exceptions," and in the continuation of the text on page 1141 it is said: "When a municipal corporation is bound by law to perform some duty, and that duty it has not performed, it can not exonerate itself by showing that it had engaged a contractor to do the duty for it, it is not made liable for the negligence of the contractor but it is liable for failing to perform the duty imposed upon it by law." See also 13 R. C. L. 332. The doctrine of that excerpt has been adopted and applied by this court in a number of cases with reference to contracts concerning the highways of a municipality, the latest one of which is Lampton and Burk v. Wood, 199 Ky. 253. Other cases to the same effect are Webster v. C. & O. Ry. Co., 32 Ky. L. R. 404, and City of Louisville v. Bott's Admx., 151 Ky. 578. The cases proceed upon the theory that "The obligation of the municipality to keep its streets in reasonably safe condition for public traveling is unconditional," and that it can not relieve itself of the burden by any effort to shift the duty upon others either on abutting property owners or on independent contractors; hence, the text in the reference to 13 R. C. L. on the direct point under con-

sideration says: "As between a municipal corporation and the public, the duty to keep the streets and highways in a reasonably safe condition for travel rests primarily on the corporation, and cannot be evaded or suspended by any act of the municipality, nor can it be delegated to another so as to relieve the municipality from liability for injuries resulting from its breach." See same volume page 355, paragraph 290. The cases relied on in support of the contention are ones relieving the municipality from the negligence of the agents or servants of the contractor while actually performing the work resulting in injuries sustained by other agents and servants of the contractor or members of the public while they are in, near or around the construction and at a place where they might be injured from any such negligence, but none of them apply to the failure of the municipality to perform a legally imposed duty as is done in this state with reference to the maintenance of highways in a reasonably safe condition for public travel.

Answering insistence (c), it is only necessary to say that whether under the proven facts and circumstances plaintiff was guilty of contributory negligence was essentially a question for the jury. It is true he stated that he knew the bridge was being repaired and that the wire ropes or cables did not look good to him, but he likewise stated that he never made any critical examination of them nor did he know that the one which broke and caused the bridge to fall with him was in any wise worn or defective, as was shown by the proof in the case. If the accident had been produced because of any unfinished work for which Gregory was employed to do, and plaintiff knew of the unfinished cause which produced his injury and with such knowledge attempted to use the bridge there might be some grounds for this contention. But, as we have seen, no such cause produced the injury and it appears from a clear preponderance of the evidence that it was never intended by the city that Gregory, in doing the work for which he was employed, should supply new cables, but his work appears to have been confined to supplying new wood work to the bridge in the way of sills, flooring, etc. The sills, at the time plaintiff attempted to use it, and for some days prior thereto, had been laid and properly fastened; a part of the flooring had also been finished, but on portions of the bridge it had not been nailed down, although the material had been prepared in the proper dimensions and laid at those

places on the sills in a loose condition so that persons might use the bridge by exercising proper caution in walking over that portion of the unfastened or insecurely laid floor. It was in that condition on Saturday, the day before the accident, and about noon of that day it was thrown open for travel and had been used by the public at the time of the accident for something more than thirty hours. On the same Saturday afternoon there is proof that the mayor of the city crossed the bridge in its then condition, and that one or more of the city's councilmen did likewise. It was, therefore, a question for the jury, under an appropriate instruction, not only to say whether plaintiff was guilty of contributory negligence in using the bridge in that condition, even if his injury had resulted from the unfastened floor, and it was also a question for the jury to say whether the officers, agents and servants of the city, whose duty it was to look after such matters, had knowledge of the bridge being thrown open for public travel, and thereby temporarily accepted it for such purposes, although it was not entirely finished nor the work formally accepted.

Taking up now reason (2), it may be said generally that the distinction between what is and what is not a governmental function of a municipality, so as to render it immune from liability in the one case and liable in the other, is very difficult of determination and the law applicable thereto is in much confusion, as will be seen in the text of 19 R. C. L. 1111, paragraph 392. It is therein pointed out that the sovereignty, or a couny or township, which is a component part of it is not generally held liable for the failure to maintain in a reasonably safe condition the highways of the country; but with reference to a chartered municipality the text says. "If a city is given the privilege of exercising a governmental duty ordinarily carried on by the state or county the control of which is a distinct advantage, there is such a benefit as to create a commensurate liability. It is for this reason that it is held in the majority of the states that although a *county* or *township* is not liable for injuries from defective highways, when the control of the highways within its limits is given to a *city* or to an *incorporated town* or village, it becomes subject to civil liability for failure to perform the correlative duty." (Our italics.) Such is the holding of the cases, *supra*, from this court, the reasoning of which we need not repeat or in-

sert in this opinion. Suffice it to say that where the delegated act to be performed by the municipality is an absolutely imposed one, it becomes liable to any one injured for its failure to exercise reasonable care and diligence to perform that duty, although it may be one which might be technically classified as a governmental function, and the authorities referred to so hold. We, therefore, conclude that reason (2) is without merit. We have hereinbefore discussed and disposed of, adversely to counsel's contention, reason (3), urged for a reversal, but an additional case against it is Gatewood v. City of Frankfort, 170 Ky. 292.

Disposing of reason (4), the court gave to the jury instructions numbered consecutively from 1 to 7, both inclusive, to all of which defendant objected. The first was in some respects the usual one in such cases, but it made the city liable for the dangerous or unsafe condition of either of the cables or ropes swinging the bridge and by reason of which, if any, it fell, and if such unsafe condition was known by the city "or any of its officers or agents," or could have been known by them by the exercise of ordinary care. That instruction was erroneous in two respects, in that, firstly, it assumed that the city had notice of the fact that the public was using the bridge while the repairing being done to it was unfinished and it took no precautionary steps to prevent such use, and, secondly, in charging the city with knowledge concerning the use of the bridge and its condition by "any of its officers or agents;" when, under the law, it is only the knowledge of such of its officers or agents, whose duty it is to look after the repairing of its highways, with which it may be charged. 28 Cyc. 1397-9, and City of Louisville v. Keher, 117 Ky. 841. The law, as stated in the reference to Cyc., is that "The municipality is charged with notice of any defect or obstruction in the highway, to any officer or agent whose duty it was to report, or make provision for the correction of the defect, or to look after or control the making of repairs or removal of obstructions, but not to other officers or agents not charged with such duties, or to employes." The Keher case and many others since then have applied the rule laid down in the excerpt, which is consonant with sound reason and just principles, since it could not be said that a city should be chargeable with knowledge of the condition of its streets possessed by its tax collector, police judge, assessor or other agent, officer

or employee whose duties are wholly disconnected from looking after its streets or highways. The alternative duty of the jury in case they did not believe the facts set forth in instruction number 1 was not given to the jury either in that instruction or any other one. Instruction number 2 told the jury that if it believed that the bridge was not in a dangerous condition but in a reasonably safe one, a verdict should be returned for the defendant, but nowhere was the jury informed that, although it might believe the bridge was in a dangerous condition, yet if it believed from the evidence that the city had exercised reasonable diligence to discover its defects and had failed to do so, it would not be liable, and under the instructions the only verdict that the jury could return, if the bridge was as a matter of fact unsafe, was one in favor of plaintiff which in effect made the city an insurer of its safety, and which is universally held not to be the law. The jury, under the facts of this case, should also be instructed upon the point, as we have hereinbefore intimated, as to whether the city through knowledge of any of its proper officers knew that the bridge in its unfinished condition was being used by the public at the time of the happening of the injury or could have known it by the exercise of ordinary care, and failed to take precautionary steps to prevent its use. With the instructions modified, as herein indicated, and supplemented by the indicated one would, we think, present the law of the case under the proven facts.

As a basis for reason (5), it is shown in the bill of exceptions that plaintiff's attorney, in his closing argument to the jury, said: "The jury cannot find against the plaintiff under the instructions unless they believe that but for plaintiff's negligence *alone* he would not have been injured; and unless they believe that his (plaintiff's) negligence was the *sole* cause of his injury." The court declined to sustain the objections to that statement or to admonish the jury not to consider it. It certainly can not be contended but that it was highly improper and was made not only in the face of the given instructions but also in direct conflict with the law relative to the defensive effect of contributory negligence, since in all jurisdictions in cases where the doctrine of comparative negligence is not applied, contributory negligence is a complete defense, whether it was the *sole* or only a *contributory* cause of the injury. Big Hill Coal Co. v. Ab-

ney's. Admr., 125 Ky. 355, and many cases from this court both preceding and following it. Counsel, in discussing before the jury the law of the case as presented in the instructions, has no right to misstate them, and, to say the least of it, the court upon objection should promptly take such steps as is necessary to correct the statement and to remove its effect from the jury, since any other course would convert the tribunals of the country from institutions of fairness and justice to all litigants into institutions of oppression and injustice. We are not so sure but it would have been the duty of the court in this case to have sustained a motion to discharge the jury and continue the case if one had been made.

For the reasons indicated, the judgment is reversed with directions to sustain the motion for a new trial and for proceedings consistent with this opinion.