# City of Catlettsburg v. Sutherland's Administrator.

(Decided Feb. 17, 1933.)

GEORGE F. GALLUP and H. F. PRICE for appellant.

DYSARD, TINSLEY & PRICHARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The general direction of Louisa street in the city of Catlettsburg, Ky., is north and south. It skirts a hill and its paved surface was constructed by digging down the hill on the west side, leaving an embankment on the east side, and in ascending the hill it makes some curves.

On the late evening of June 30, 1931, J. J. Sutherland was driving an automobile south on that street and ascending the hill. He had in his car two fellow travelers. At a point on the street, and just beyond which there was a curve, William Puckett resided with his family on its east side a short distance from the foot of the embankment. Some years ago the city improved Louisa street with concrete and made the traveling surface sixteen feet wide with a decline from the center toward each side. While the concrete was new and green, twenty-penny nails were driven into its extreme edges and over them there was constructed concrete curbings four inches thick and about six inches high, thus forming a guttering on each side of the road to take care of the water falling upon it, and to prevent it from softening the shoulders of the roadbed, and causing portions of it on its lower side from wasting away.

About opposite Puckett's house Sutherland overtook George F. Gallup, who was driving his car in the same direction, and he attempted to pass him on the left, which required a swerving of his car toward the embankment side of the street. In his attempt to pass he struck some portion of the rear part of Gallup's car and ran his car against the described curbing constructed on that side which gave way and caused his car to run over the embankment. In some manner he was pinned in it and a fire started which burned him so that he died shortly thereafter. The appellee and plain-

tiff below, J. W. McKinzie, qualified as his administrator and filed this action in the Boyd circuit court against the defendant and appellant, city of Catlettsburg, to recover for the death of his decedent, which he alleged in his petition was due to its negligence in not maintaining Louisa street at that point "in a safe condition and good repair for the use of the general public * * * in that the concrete and curbing from which said street was constructed, was permitted to become deteriorated and broken, and the said six-inch concrete curb on the north (east) side of said street was permitted to fall off for a distance of approximately 20 feet," and that holes had appeared in the surface of the street at that point and the city had negligently failed to repair them.

The answer denied the material averments of the petition, and in another paragraph pleaded contributory negligence which was denied by reply. The trial resulted in a verdict in favor of plaintiff for the sum of $5,000, which the court declined to set aside on defendant's motion for a new trial, and from the judgment pronounced thereon this appeal is prosecuted. A number of grounds are set out in the motion, but some of them are immaterial, and others will not likely occur upon another trial, for which reasons we have concluded to discuss and determine such of them only as we conclude merit it.

It is first contended that the court erred in not sustaining defendant's motion for a peremptory instruction in its favor, and which we conclude presents the most serious question in the case. In disposing of it, it becomes necessary to consider in connection therewith another ground involving complaint of instruction No. 1 given by the court to the jury over defendant's objection. It will be remembered that the petition averred, as negligence on the part of the city, the failure to construct and maintain the *curbing* of the street on its east side over which decedent's automobile was precipitated, and the complained of instruction told the jury that if it believed from the evidence that at the time and place referred to in the evidence, *"the concrete curb* on said street had been permitted to deteriorate and become broken and fallen off the roadway, and that holes had been permitted to come in said street, *and that the falling off of said curb,* and the presence of said holes *or either,* rendered said street in a condition not reason-

ably safe for the use of the public, and that the presence of *said broken and fallen off curbing* and said holes in said street, and the danger therefrom, were known to the defendant, City of Catlettsburg, or its agents or any of them, charged with the duty of repairing or inspecting its streets, *including its police officers,* or could have been known to them or to any of them by the exercise of ordinary care long enough prior to the injury and death of the said J. J. Sutherland to have enabled the defendant's said agents to have repaired and restored said *broken curbing* and said holes, and shall further believe from the evidence that the said J. J. Sutherland, while driving an automobile along Louisa Street, and while exercising ordinary care for his own safety, drove into and struck said holes in said street, and by reason thereof, or by reason of the breaking off and falling away of the *concrete curbing* from said street, said automobile was caused to and did leave the roadway and fall over the embankment on the north side of said street, whereby said Sutherland was killed, the law is for the plaintiff, and the jury should so find.'' (Our italics.)

It will be perceived that the instruction authorized a recovery for (a) the defective condition of the *curbing* on the east side of Louisa street at the point where the accident occurred, if by reason thereof decedent's car was precipitated over that side. Necessarily, for that proposition to be true it became and was the duty of the city to maintain the curbing or other barrier for the purpose of preventing such accident to vehicles traveling on the street. If it was not its duty to do so, then it would logically follow that it would not be negligence to maintain the curbing it did have in a sound condition after it had been constructed, and which was not to serve as a barrier, but only to form the side of a guttering by which the water falling on the surface of the street could be carried away, without running off on its sides. The instruction likewise informed the jury (b) that notice of both the condition of the street and the curbing at the point would be brought home to the city if its "police officers" had knowledge thereof (without the further qualification necessary to make their notice that of the city), thereby assuming that it was a part of the duty of such officers to inspect and report the condition of the public ways of the city. We will refer to

544

such subdivisions of the instruction as "defects" therein.

Defect (a) was before us in the recent case of Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S. W. (2d) 1032, 1034, wherein the question of the duty of the city to erect barriers to prevent accidents of the nature here involved was presented. In the discussion of the question, as contained in the opinion therein, it is pointed out that in some jurisdictions, particularly Massachusetts, it is held that it is the duty of the city (at least under some circumstances) to so construct and maintain such barriers; but in denying that as a general doctrine in this jurisdiction, we therein determined: "That there was no duty on the part of the city of Catlettsburg, under the conditions presented in this case, to have maintained a guard or barrier. To have prevented the car going over the embankment into the river in this case would have required a wall of sufficient strength to withstand the force of the moving automobile and to have wrecked it. There was no duty to maintain such an obstruction. The city not being shown to have been negligent, it was entitled to a directed verdict."

No other act of negligence was relied on in that case, and it having been found to impose no obligation on the part of the municipality, the peremptory instruction was directed. In that opinion domestic cases in which analogous questions, involving the same principle, are referred to and which tend toward exonerating a municipality from maintaining such barrier. Those cases are: Town of Elsmere v. Tanner, 158 Ky. 681, 166 S. W. 220; City of Harrodsburg v. Abram, 138 Ky. 157, 127 S. W. 758, 29 L. R. A. (N. S.) 199; and Overton's Adm'x v. City of Louisville, 221 Ky. 289, 298 S. W. 968. Reference is also made therein to annotations in 27 A. L. R. 937, and 36 A. L. R. 413, wherein the conclusion involving the correct rule is thus stated, with approval by us, in that opinion: "When it comes to an application of that general rule, where the condition is obvious and the elements of concealment of the danger or notice thereof are not involved, it is held that there is no duty to maintain a barrier of sufficient strength to resist the force of an automobile or to prevent it from going over an embankment alongside the highway, even though at a curve, presenting a hazardous condition. City of

Dallas v. Maxwell (Tex. Com. App.) 248 S. W. 667, 27 A. L. R. 927; Wessels v. Stevens County, 110 Wash. 196, 188 P. 490; Miner v. Rolling, 167 Wis. 213, 167 N. W. 242, L. R. A. 1918D, 1178; Camp v. Allegheny County, 263 Pa. 276, 106 A. 314; Dorrer v. Callicoon, 183 App. Div. 186, 170 N. Y. S. 676; Wyandot County Com'rs v. Boucher, 98 Ohio St. 263, 120 N. E. 700; Roberts v. Town of Eaton, 238 N. Y. 420, 144 N. E. 667, 36 A. L. R. 411; Best v. State, 203 App. Div. 339, 197 N. Y. S. 69, affirmed 236 N. Y. 662, 142 N. E. 325.''

The discussion of the question, made in that opinion, might be supplemented by calling attention to the fact that if under circumstances and conditions like those here presented it is the duty of the city to construct barriers for the purpose of preventing vehicles from going over the embankment of a street, it would likewise be its duty to inaugurate and maintain some means or method whereby pedestrians on elevated sidewalks might not walk or fall off them. Also the principle contended for would make it the duty of those charged with the obligation to maintain the streets safe for travel to see to it that there were no dangers on either side of them whereby a traveler on the way might be injured if he ran off them. Such a doctrine would require the removal of all sorts of obstructions at the sides of the streets, whether permanent or temporary, and thereby impose a burden far beyond what is necessary to protect the safety of ordinarily prudent and careful travelers. Of course, there might be imaginable conditions where the proper care for the safety of travel would require some such precautions, but it is sufficient to say that, even if that be true, none such existed in this case. It is, therefore, clear that the court improperly authorized the jury to find for plaintiff if the *curbing* was insufficient to prevent decedent's automobile from going over the embankment.

Defect (b), as we have seen, told the jury (without qualification) that notice to a police officer of the condition of the street was notice to the defendant, and which was in direct conflict with the rule as previously announced by this court in a number of opinions, among which are: City of Louisville v. Lenehan, 149 Ky. 537, 149 S. W. 932, Ann. Cas. 1914B, 164; City of Paducah v. Ivey's Adm'r, 196 Ky. 484, 245 S. W. 4; City of Harlan v. Parsons, 202 Ky. 358, 259 S. W. 717; City of

Louisville v. Carr, 204 Ky. 119, 263 S. W. 674; and Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921. Those cases hold that ordinarily a policeman, whose duty it is to preserve order, and to apprehend those guilty of infractions of the criminal and penal laws that are operative within the municipality, are not vested with any duty appertaining to the safety of the public streets and ways of a city, and that, in the absence of such imposed duty, notice to them of the condition of such streets and ways is not notice to the city. We, therefore, conclude that instruction No. 1 was prejudicially erroneous because containing both defects that we have discussed.

There is left for determination whether the holes in the east half (which was decedent's left side in the direction he was traveling) were shown by the evidence to have contributed to the injury sustained, i. e., the precipitation of decedent's car over the embankment on the east side of the street. Puckett, and one or two others at his home, testified that they saw decedent as he turned from the left side of the street, which was over against its precipice side, and that they immediately anticipated from the manner of his travel and the direction he was turned that his car would run over the embankment, which it did. They also stated that the curbing at the particular point had not fallen away, but that it had decayed, or in some manner had such insufficient resistance that it did not prevent the car from going over the embankment. Mr. Gallup testified that decedent's car as it approached his from the rear, traveling in the same direction, was moving at a speed of from 30 to 40 miles an hour, as did also a Mr. Bocock, who was approaching the point from the opposite direction and who saw decedent's effort to pass Gallup's car, notwithstanding Bocock was only about forty feet south of it where he stopped his car and he and his wife witnessed the precipitation. The rear part of decedent's car struck Gallup's car on its rear left side and damaged and injured it, and which necessarily had a tendency to cause decedent's car to be shoved or to bounce in the opposite direction and towards the embankment. One of the Puckett witnesses, or perhaps two of them, testified to having seen decedent's car just before it ran over the embankment and that it appeared to be bouncing, but they did not pretend to say *what* produced that condition (not having seen the col-

lision with Gallup's car), although they did say that probably some holes and depressions in the street at that point that had been made in the concrete surface may have done so.

However, there was testimony by Gallup and other eyewitnesses, of greater persuasiveness, that the apparent bouncing was produced by the collision of decedent's car with Gallup's car as the passing of the latter was attempted to be made. It is, therefore, extremely doubtful whether the evidence was sufficient to show that the holes in the street (and which, according to our ruling supra, is the only remaining ground for recovery) were the proximate cause of the fatal accident. Had there been positive testimony that decedent's car was, by reason of the holes in the street, made to run over the embankment, and also evidence that another cause might have also produced it, then, perhaps, it would be a question for the jury to determine, which was the actual one. But the Puckett witnesses (and which were the only ones who testified on that point) did not say that the holes in the street *were* the cause of the accident, but only that they probably produced what they termed was the "bouncing of the car" just before it went over the embankment; but which, as we have already pointed out, was more likely to have been produced by the collision with Gallup's car. We repeat, therefore, that the condition of the evidence as appearing in the record renders the submissibility of the case to the jury a doubtful one. But, since the judgment must be reversed for the reasons hereinbefore discussed, we have concluded to not determine that question on this hearing, since the evidence might be different upon another trial.

Plaintiff introduced testimony proving that the city repaired the holes in the street after the accident, and which was contrary to the correct practice as declared by us in numerous cases, some of which are: L. & N. Railroad Co. v. Bowen, 39 S. W. 31, 18 Ky. Law Rep. 1099; Louisville & N. R. Co. v. Williams, 165 Ky. 386, 176 S. W. 1186, L. R. A. 1915E, 613; Union Light, Heat & Power Co. v. Lakeman, 156 Ky. 33, 160 S. W. 723; L. & N. Railroad Co. v. Scott's Adm'r, 188 Ky. 99, 220 S. W. 1066; and others preceding and following them, some of which are referred to in those opinions. An apparent though not actual exception to that rule is

pointed out in the recent case of Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S. W. (2d) 705, and others involving the same point contained in 13 West Kentucky Digest, Master and Servant, beginning on page 539.

It was held in those cases that under their peculiar facts and circumstances evidence of subsequent repairs is competent for the purpose of establishing the *essential* fact of *negligence*. An illustration of the circumstances under which it is so permissible is found in the case of White Star Coal Company, supra. It was alleged in that case that the injury for which recovery was sought therein was produced by defective wiring so as to create a cross-current resulting in sparks followed by conflagration. A transformer from which wires ran into the burnt building was alleged to have been defective and that by reason thereof the fire was produced by the emission of sparks from wires. It was shown that it had occurred on a number of prior occasions, but after the fire, repairs were made to the transformer and no such occurrences thereafter happened. It was held in that case, as well as in all similar prior ones, that the fact that no such happenings occurred *after* the repairs was a provable circumstance to show the defective condition before the repairs. This case presents no such situation, and it was error for the court to permit plaintiff to prove the making of the repairs to the street following the accident.

During a recess of the trial of the case three jurors held a conversation with deceased's widow of some ten or fifteen minutes' duration. Upon the convening of the court defendant manifested that fact and moved that the jury be discharged, which the court overruled. That conversation is admitted by the jurors and also by the widow, but it is claimed that no question connected with the trial was discussed therein. After the verdict was returned, defendant's counsel discovered that one of those same jurors held another conversation with the widow, during another recess of the trial, on the streets of Catlettsburg and which was also admitted by that juror and the widow. A certain female witness had testified for plaintiff, and the participants in the last conversation testified that it related only to that witness but not to her testimony. After the latter discovery the fact was made a supplemental ground for

a new trial upon the hearing of which the facts above stated were disclosed, and complaint is made of that ruling on this appeal, as well as the one overruling 'the motion to discharge the jury for a similar reason. Since a new trial is herein ordered, we have concluded to limit the discussion of these complaints and to not determine whether they, standing alone, would be sufficient to authorize a reversal of the judgment. However, we do not hesitate to say that the conduct of the jurors, as so disclosed, as well as that of the widow, a beneficiary in whatever judgment might be obtained, was very improper, and especially so when she was a stranger to the jurors, and there was no occasion for them conversing with her upon any social or local matters in which they were mutually interested, and still more especially so when it concerned a witness who had testified in the case. In considering and disposing of the appeal, we have not overlooked the fact that neither of the occupants of decedent's car were introduced or offered as witnesses in the case and no explanation is made as to why it was not done.

Defendant offered instructions, based upon evidence, that if decedent was intoxicated at the time, or if he was unlawfully transporting liquor in his automobile, then in neither of those events could his administrator recover for his death. The court refused to give either of them, and it is strenuously insisted on this appeal that such refusal of the court was error; but we cannot agree therewith. It requires no argument to demonstrate that, even if it had been admitted that deceased was unlawfully transporting liquor, he would thereby become an outcast and forfeit his right as a citizen to the protection of the laws for the preservation of the members of society and the protection of their rights. Neither would the fact of his intoxication be a defense, but only a circumstance to establish contributory negligence on his part, and therefore admissible in evidence for that purpose. It is therefore clear that the court did not err in declining to give either of those instructions.

Wherefore, the judgment is reversed, with directions to sustain the motion for a new trial, followed by proceedings not inconsistent with this opinion.