## City of Louisville v. Lenehan.

(Decided September 27, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Municipal Corporations—Duty of City to Repair Defects in Street. —The duty of a city to repair a defect in a street arises only after actual notice of its existence, or after such a lapse of time as would justify the imputation of negligence if the defect had not been discovered.

2. Municipal Corporations—Charged With Notice of Defect in Street. —A municipality is charged with notice of any defect or obstruction in the highway, to any officer or agent whose duty it was to

report, or make provision for the correction of the defect, or to look after or control the making of repairs or removal of obstructions, but not to other officers or agents not charged with such duties, or to employees.

3. Municipal Corporations—Office of Police Officer—Created by Statute.—The office of a police officer is not known to the common law. It is created by statute; and such an officer has, and can exercise, only such powers as he is authorized to do by the Legislature, expressly or derivatively. He is an officer of the State rather than of the municipality in which he exercises his office.

4. Municipal Corporations—Nuisances—Duty of Police Officer to Remove.—Section 2885 of the Kentucky Statutes, which imposes upon the police force of cities the duty of removing all nuisances in the public streets, imposed upon a policeman the duty of guarding a hole created by a "cave-in" in the street, and of which he had notice; and, the knowledge of the policeman was notice to the city of the dangerous condition of its street.

5. Municipal Corporations—Condition of Streets—What Constitutes Nuisance.—A nuisance is not necessarily a physical obstruction placed in the street, and which can be removed by physical exertion; it signifies anything that worketh hurt, inconvenience or damage. A dangerous hole caused by a sudden caving of the surface of the street is a nuisance within the statute, which requires a policeman to remove all nuisances from the street.

6. Municipal Corporations—Removal of Defects From Street by Policeman—Instructions.—An instruction which imposes upon a policeman the duty of protecting the traveling public from defects in a street, by using specific precautions, is misleading and erroneous; it should have required the policeman to exercise ordinary care; and use such means as were reasonably sufficient to warn pedestrians and travelers of the danger.

7. Municipal Corporations—Condition of Streets—Sufficiency of Means to Warn Public.—The test of sufficiency of the means employed to warn the traveling public of a dangerous hole in a street, is not particularly, or in all cases, whether barriers and lights have been used, but whether or not the means employed, whatever they were, were reasonably sufficient for the purpose.

LEON P. LEWIS, CLAYTON B. BLAKEY and HUSTON QUINN for appellant.

CLEM W. HUGGINS and FRANK COYLE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

While riding horse-back westwardly on Portland avenue, in Louisville, about 6 o'clock p. m., on April 18, 1908, the appellee Lenehan was thrown from his horse and injured. The accident occurred near the northwest corner of Portland avenue and lower 17th street. Port-

land avenue was paved with granite. The city of Louisville was repairing the street west of 17th street, and had made an excavation under the street for the purpose of inserting a drain or sewer pipe thereunder. Ordinarily, work of this character would cause no danger or break in the surface of the street; but, as there had been numerous rains for sometime immediately preceding the day of the accident, it is probable that the water seeped between the stones to such an extent as to loosen their support. At any rate, and whatever may have been the cause, the large flagging stones which constituted the footway crossing from the east to the west side of Portland avenue caved in between the rails of the northern street car track, to such an extent as to leave a hole about 2 feet wide, and about 6 feet deep, between those tracks. This break or "cave-in" occurred between half past 3 and 4 o'clock in the afternoon, and was discovered by McAndrews, a policeman of the city, about 5 o'clock of the same day. He remained at that point to warn those using the street of the existence of the danger. According to McAndrews' testimony, which is supported by several other witnesses, he was standing near the hole and guarding it, when Lenehan came riding down the street. McAndrews and several other witnesses testify that they waived and shouted at Lenehan, to prevent his riding head-long into the hole; but Lenehan, who admits that he was coming at a pretty good rate of speed, says he thought McAndrews was merely saluting him, and without stopping, he proceeded down the street until his horse fell into the hole, throwing Lenehan head-forward on to the granite street, and injuring him. The policeman and the other witnesses who were with him, say that Lenehan was coming at a gallop, and that he not only failed to pay any attention to their warning, but that they had difficulty in getting out of the street in time to avoid being run over by Lenehan. Appellee had no bones broken; but he remained in bed about three weeks; was confined to the house for a period of two months, and claimed to have received a severe injury to his chest, which resulted in numerous hemorrhages from time to time. He incurred a doctor's bill of $84.00. He brought this action to recover damages for his injuries, and recovered a verdict for $1,084.00; and from a judgment upon the verdict the city appeals.

Several grounds are relied upon for a reversal by the city; but, since the case will have to be reversed for a new trial, it is necessary to consider only two of them.

Appellant insists that its motion for a peremptory instruction directing the jury to find for the defendant, should have been sustained. This motion was based upon the theory that at the time of the accident there had been no notice to the city of the defect in the street, so as to give the city an opportunity to repair the street, or protect the traveling public. The duty of a city to repair defects in a street arises only after actual notice of its existence, or after such a lapse of time as would justify the imputation of negligence, if the defect had not been discovered. There is no proof of notice to the city of this "cave-in," except the notice to the policeman McAndrews; and it is insisted that the notice to McAndrews was not notice to the city. This is not a case of imputed negligence by the city, since sufficient time had not elapsed between the "cave-in" and the accident, for the city to have discovered the dangerous hole, by the exercise of ordinary care.

The rule is stated in Hazelrigg v. Board of Councilman of the city of Frankfort, 29 Ky. L. R., 207; 92 S. W., 584, as follows:

"In order to render the city liable it must be shown that it, by exercising ordinary care, could have known of the existence of the obstruction in the street and removed the danger. We cannot say that it is actionable neglect for the city to fail to discover in three hours an obstruction in one of its streets caused by a lot of rock screenings being dumped there. There is no evidence that the city knew of the obstruction, and the bare fact that it had been there for three hours is not sufficient to charge it with liability. (Canfield v. Newport, 73 S. W., 888; Bell v. Henderson, 74 S. W., 206; Briel v. Buffalo, 144 N. Y., 163; Reed v. Detroit, 99 Mich., 204; Davis v. Omaha, 47 Neb., 836; Warsaw v. Dunlap, 112 Ind., 576.)"

The same rule was recognized in the late case of city of Harrodsburg v. Sallee, 142 Ky., 829.

The city, therefore, cannot be liable unless it had actual notice or knowledge of the existence of the hole, and failed to exercise ordinary diligence in preventing travelers upon the street from falling into it; and, un-

less the knowledge of McAndrews, the policeman, be notice to the city, it had no such notice or knowledge.

In 28 Cyc., 1397, the general rule as to what constitutes notice to a municipality, through its officers or agents, is thus stated:

"The municipality is charged with notice of any defect or obstruction in the highway, to any officer or agent whose duty it was to report, or make provision for the correction of the defect, or to look after or control the making of repairs or removal of obstructions, but not to other officers or agents not charged with such duties, or to employees, and knowledge before election or induction to office will not bind the corporation."

In Dillon on Municipal Corporations, 5th Edition, section 390, it is said:

"The office of a police officer is not known to the common law; it is created by statute, and such an officer has, and can exercise, only such powers as he is authorized to do by the legislature, expressly or derivatively. He is an officer of the State rather than of the municipality in which he exercises his office."

This general rule is supported by Reid v. City of Chicago, 53 Ill. App., 554; City of Columbus v. Ogletree, 96 Ga., 177; City of Cleveland v. Payne, 72 Ohio St., 347; 70 L. R. A., 841; Cook v. City of Anamosa, 66 Ia., 427; Rich v. Rockland, 87 Me., 188; Abbott v. Rockland, 105 Me., 147; Town of Norman v. Teel, 12 Okla., 69; City of Erie v. Phelps, 56 Kans., 135; Haskell v. Barker (Tex.), 134 S. W., 833.

The rule is well stated in Cleveland v. Payne, supra, as follows:

"The question presented is whether the knowledge of a policeman concerning the defective nature of the covering over the hole in the sidewalk is such notice to the municipality as to make the latter responsible for damages resulting from the defect. It may be accepted as the general rule that the municipal corporation will be liable if knowledge of the defect is brought home to an officer or employee who has some duties to perform in regard to the removal of defects or obstructions in the streets. Accordingly, it has been held that knowledge of a defect or obstruction by a policeman, where he is properly charged with duties with respect to the removal of the defect or obstruction, is notice to the corporation. Even as to the propostion as thus stated there is not en-

tire harmony among the courts which have considered
this question; but, as the authors of a leading treatise
put it: 'We think that, upon principle, a city ought not
to be charged with actual notice in any case unless the
officer or person having the knowledge is in some way
charged with the duty of maintaining, repairing, or look-
ing after the streets.' Elliott, Roads and Streets, 2d
ed., section 629. The fundamental proposition in cases
of this kind is that notice to the agent is notice to the
principal, provided that the notice must have reference
to matters within the scope of the agent's authority.''

It is apparent, therefore, that the knowledge of Mc-
Andrews, the policeman, was not notice to the city, un-
less McAndrew was, in some way, charged with the duty
of maintaining, repairing or looking after the streets.
If the policeman's duty was strictly police duty, and
nothing more, his knowledge of the obstruction in the
street was not notice of that fact to the city. But, if
there was any duty imposed upon him by statute requir-
ing him to protect the public against the danger thus
known to him, that fact made his knowledge notice to the
city; and, it is insisted that such a duty is imposed upon
a policeman by section 2885 of the Kentucky Statutes,
which prescribes the duties of the police force of cities
of the first class. The duties there imposed are many,
and varied in their character, as will be seen from a read-
ing of said section, which is as follows:

''It is hereby made the duty of the police force, at
all times of day and night, and the members of such force
are hereby thereunto empowered, to especially preserve
the public peace; prevent crime; detect and arrest of-
fenders; suppress riots, mobs and insurrections; dis-
perse unlawful or dangerous assemblages, and as-
semblages which obstruct the free passage of public
streets, sidewalks, parks and places; protect the rights
of persons and property; guard the public health; pre-
serve order at elections and all public meetings and as-
semblages; prevent and regulate the movements of all
teams and vehicles in streets, and remove all nuisances
in the public streets, parks and highways; arrest all
street mendicants and beggars; provide proper police
attendance at fires; assist, advise and protect immi-
grants, strangers and travelers in public streets, at
steamboat landings and at railroad stations; carefully
observe and inspect all places of public amusement, all

places of business having excise or other licenses to carry on any business; all houses of ill fame or prostitution, and houses where common prostitutes resort and reside; all lottery offices, policy shops, and places where lottery tickets or lottery policies are sold or offered for sale; all gambling houses, cock-pits, rat-pits and public common dance houses, and to repress and restrain all unlawful or disorderly conduct or practices therein; enforce and prevent the violation of all laws and ordinances in force in said city; and for these purposes, with or without warrant, to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses.''

It is insisted that the two provisions of this statute, which require the police force to ''remove all nuisances in the public streets, parks and highways,'' and, ''assist, advise and protect immigrants, strangers and travelers in public streets, at steamboat landings, and at railroad stations,'' are broad enough, in their terms, to bring this case within the rule above laid down, and imposed upon the policeman the duty of guarding the hole in the street to prevent injury to the traveling public, thereby carrying notice of the danger to the city.

We do not think the last section relied on, which requires a policeman to ''protect immigrants, strangers and travelers in public streets, at steamboat landings and at railroad stations,'' can be given the broad construction contended for by appellee. Evidently, this clause of the statute was intended to protect strangers from designing or inconsiderate persons, rather than from physical defects of the highway, which they could see and guard against as well as residents of the city. But the former provision, which requires a policeman to ''remove all nuisances in the public streets,'' is broad enough to require him to protect the traveling public against the danger of a hole in the street.

A nuisance is not necessarily a physical obstruction placed in the street, and which can be removed by physical exertion; it ''signifies anything that worketh hurt, inconvenience or damage.'' 3 Bla. Com., 216; Cooley on Torts, 670. It is in this general sense that the term ''nuisance'' is used in the statute supra. When it requires a policeman to remove a nuisance which constitutes an obstruction, it is his duty to actually remove it, if it be physically possible; or, if that be not possible,

to remove the nuisance by abating it in some proper way, and, if necessary, by personally guarding it until it can be abated or removed by the proper authority.

It is insisted, however, that under section 2825 of the Kentucky Statutes, the duty of repairing the streets is imposed upon the Board of Public Works, while the police force is under the sole control of the Board of Public Safety, which is an entirely different and independent arm of the municipal government; and that, there being no obligation imposed by statute upon a police officer to notify the Board of Public Works, which alone has authority over the repairs of the streets, or to notify any of the city employees, of defects in the streets, the rule above announced does not apply to this case. This, however, is no answer, since the statute imposes this separate duty directly upon the policeman, who is, with respect to this duty, an officer of the State rather than of the city, and is merely obeying the command of an authority which is sovereign over all city officers. It was entirely competent for the legislature to impose any duty upon a city officer that it saw fit to so impose, and, in requiring a policeman to remove nuisances from the street it brought the case within the general rule above announced. The first instruction properly took this view of the law, and is not subject to criticism upon that account.

2. It is further claimed, however, that the first instruction given by the court to the jury was erroneous and misleading, in that it caused the jury to believe that barriers should have been put around the hole, for the purpose of protecting travelers upon the street, when it was impracticable to erect barriers on the street car tracks. This instruction reads as follows:

"It does not appear in this case by any evidence that the hole in the steet in regard to which you have heard testimony, had been in the street a sufficient length of time to enable the city to repair it; it does appear in this case that a police officer of the city knew of the condition of the street prior to the time of the accident; it was the duty of the city, through its officers and agents, after it learned through its police officer of the dangerous condition of the street to exercise ordinary care to warn persons who might be using the street, of the dangerous condition of the street by keeping personal watch upon the street, or by keeping lamps upon

the street, or, if they had a reasonable time to do so, by barriers upon the street, if it was dark, if you believe from the evidence that barriers or watching or lamps were reasonably necessary to protect persons walking or riding from falling into the hole in the street and being injured; and if you believe from the evidence in this case that the city, through its officers, failed to exercise ordinary care to warn travelers or protect them from being injured by falling into the hole and by reason of such failure the plaintiff, Lenehan was caused to fall into the hole and was injured, the law of the case is for the plaintiff and you should so find.

"But, unless you believe from the evidence that the city, through its officers failed to exercise ordinary care by lamps, or by personal watching or by barriers, if you believe from the evidence that they had time to put up barriers in the exercise of ordinary care, to warn travelers, and negligently permitted the plaintiff Lenehan, to ride the horse into the hole and that he was thereby injured, then the law of the case is for the defendant and you should so find."

Counsel for appellant insist that this instruction is erroneous, because it imposed upon the policeman a duty which did not exist under the circumstances of the case, in that it submitted to the jury the specific duty of the policeman to erect barriers around the hole, or by watching it, or placing lamps about it, if such precautions were reasonably necessary to protect persons walking or riding upon the street. The hole was entirely between the tracks of the street car line, and for that reason, it may have been impracticable to erect barriers immediately around or in front of it, since such barriers would obstruct the passage of the cars. Indeed, it appears that a resident of the neighborhood unsuccessfully attempted to erect a barrier around this hole.

In Grider v. Jefferson Realty Co., 116 S. W., 692, which was a case strongly analogous in its controlling facts to the case at bar, we disapproved an instruction similar to the one before us, in the following language:

"It is the duty of a city and the persons who are using the streets, as the Jefferson Realty Company and Probst were, to give such warning and notice of excavations and obstructions by barriers and lights or other means as are reasonably sufficient to warn pedestrians and travelers of the obstruction or unsafe place. The

test of sufficiency is not particularly or in all cases whether barriers and lights have been used, but is whether or not the means employed, whatever they may be, are reasonably sufficient for the purpose.''

In confining the duty of the policeman to certain specific methods of precaution, the instruction was misleading and erroneous. Instead of so limiting his discretion, it should have required him to exercise ordinary care, and use such means as were reasonably sufficient to warn pedestrians and travelers of the hole in the street.

For this error in the instruction the judgment will have to be reversed, and a new trial ordered.