## City of Newport v. Zimmerman.

(Decided March 4, 1913.)

### Appeal from Campbell Circuit Court.

1.  Municipal Corporations—Torts—Defects in Streets—Notice of.—Knowledge thereof on the part of its superintendent of streets is notice to the city of a defect in its street, causing injury. Notice of a defect in a street is notice of that condition of things which constitutes a defect, although the city authorities may not regard it as a defect.

2.  Municipal Corporations—Torts—Defects in Streets—Coverings to Dangerous Places—Care Required.—Where a city places catch basins in its streets, it owes to the traveling public the duty of so fastening the coverings to such basins that they may be passed over in safety; and, after notice that such coverings are defective or loose, so that they are liable to be pulled or knocked from their position, the city permits them so to remain, without effort to remedy such condition, it does so at its peril.

3.  Municipal Corporations—Torts—Defects in Streets—Sufficiency and Safety of Way—Negligence.—So long as catch basins in streets are constructed upon reasonable grades, the coverings thereto made of substantial material, and are held firmly in position, the city is not negligent either as to their construction or their maintenance.

4.  Municipal Corporations—Torts—Defects in Streets—Action For Injuries—Question For The Jury.—In an action against a city for injuries to a traveler, the questions of notice to the city and negligence on its part held to be for the jury.

5.  Municipal Corporations—Instructions.—In an action against a city for injuries by a traveler being thrown from his vehicle, the wheel of which ran or fell into a catch basin, inasmuch as the evidence showed that the superintendent of streets knew of the defect causing the injury, the city was not prejudiced by the failure of the court to specify, in his instructions, the officers of the city to whom such notice should be brought home.

OTTO WOLFF for appellant.

BARBOUR & BASKMAN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Charging that the City of Newport knowingly per-mitted and suffered its street to become and remain in an unsafe and dangerous condition for public travel, in that it suffered the grating, or iron cover, over a catch basin in the center of the street to be and remain out of repair, by reason of which one of the fore wheels of the vehicle in which he was riding fell into the opening, thereby throwing him to the ground with violence and to his injury, Joseph Zimmerman brought suit against said city, in which he sought to recover damages alleged to have been sustained by him thereby. The city, for defense, denied that the covering over the catch basin was defective, or in an unsafe or dangerous condition; or, if it was in this condition, any knowledge of this fact was ever brought home to the city. Upon this issue the case was tried out before a jury, with the result that a verdict for $1,078.00 was returned in favor of the plaintiff. The city appeals.

Neither the extent of the injury nor the sum awarded as compensation therefor, is seriously questioned. Appellant relies chiefly for reversal upon the refusal of the trial court peremptorily to instruct the jury to find for it. This motion is based upon the two-fold ground: First, that the covering over the catch basin was not shown to be in a dangerous or defective condition; and second, that no notice whatever of its defective condition was brought home to the city.

The evidence shows that, in the center of the street car track, at Eleventh and Monmouth Streets, there was a sewer inlet for the purpose of taking off the surface water accumulating between the car tracks at that point. It was covered with an iron grating about one foot wide and extending the distance between the car tracks, thus making this iron grating about five feet long and one foot wide. Appellee was driving down the street in his wagon, and, in some way, this grating was thrown, pulled or pushed out of position and the wheel of his vehicle dropped into the opening, thus causing appellee to fall to the ground. Appellee introduced several witnesses who testify that, within a period of four or five months prior to the date of the accident, this same grating had been displaced, on some eight or ten different occasions, and that accidents, varying in degree of gravity, had happened there upon such occasions. At the

time of the accident complained of, the grating was broken—just how long it had been in this condition, it is not shown, but it is, not contended that the broken condition of the grating resulted in the injury, nor indeed is it claimed that it was displaced because it was broken. It is the theory of appellee that it did not fit properly, or was warped, so that when it was struck by a heavy vehicle, it would be thrown from its position over the opening; but, whatever caused it to do so, the fact remains that, upon the various occasions mentioned in the evidence, it was thrown from its position, thus leaving the opening unprotected and permitted the wheels of vehicles to fall therein. The evidence abundantly shows that, for some reason not fully explained this covering or grating was either warped so that, when one side of it was struck by the wheel of a vehicle or the hoof of a horse, it would slip from the opening, or else the bars were so constructed that the corks on the shoes of horses would become fastened therein, and in this way the covering would be pulled from over the opening. In either event, it was not a safe or suitable covering, and it is immaterial in what the defect consisted. The fact remains that it was defective.

It is insisted for the city that it had no notice of this defect. Appellee contends that, as the evidence shows that this covering had been in this condition for a great length of time, those charged with the conduct of the city affairs must have known of it, and that, from the number of accidents that had happened there, the city authorities could not have helped but know of the existence of this condition. It is shown that Chief Shields, an employe at the city stables, saw the cover thrown from its position at one time; and that Tom King, a fireman, at another time, saw a similar accident happen at this opening; and it is argued with great earnestness that, as they had observed accidents at this opening while they were in the employ of the city, the city necessarily knew of this defective condition of the grating. It is not shown, however, that either ever notified any one charged with the management of the city's affairs that such accident had happened; and, as notice to them, or either of them, is not notice to the city, it cannot be said that the mere fact that these employes of the city knew of the existence of the defective condition of the catch basin covering is binding upon the city or is notice to the city. It is difficult, however, to conceive how the city au-

thorities could have helped but know that there was something wrong with this particular catch basin covering, when the evidence as to the frequency with which accidents occurred there is considered. But, it is needless to speculate upon this, for appellant introduced as a witness, Theodore Marz, the superintendent of streets, who testified that the grating was in proper condition; that it was evidently not thrown from position by the wheel of a vehicle, but that the cork on a horse's shoe had become fastened in between the iron bars, and the horse, in lifting up his foot, pulled the grating from its position. This evidence is not based on theory merely, for he testifies that on an occasion some time prior to the date of the accident, for which a recovery is here sought, he assisted in getting a vehicle owned by Dr. Hembold, the present mayor, out of this same catch basin, and that, in passing over it, the cork on the horse's shoe had pulled the cover off the basin and the wheel had dropped into the hole. Inasmuch as this accident is shown to have occurred some time prior to the accident complained of, certainly the city, through its superintendent of streets, knew that the grating over this catch basin was in such condition that it had been, and could be, pulled from its position, and of course would be liable to be so removed again. When this evidence of the superintendent of streets is considered in connection with the evidence offered by appellee as to the condition of this catch basin cover, both before and after the accident, we are of opinion that this fact was known to the city, for the knowledge of the superintendent of streets is knowledge of the city, this official being charged with the duty of keeping the streets in a condition suitable for public travel.

It appears that this grating is held in position practically by its own weight, and that it is not fastened in any way. Of course, if the cork of a horse's shoe then becomes wedged in between the iron bars thereof, and he exerts sufficient strength to overcome the weight of the grating, in lifting his foot he will necessarily pull the grating from its position. Such condition should not be permitted to exist in a public street. A street is made especially for horses and vehicles to pass over; and when sewer drains are placed therein, the gratings over them should be so well secured in position that they cannot be removed unless the fastenings are undone. In this way only can the public be protected. One, in driving over the cover to a catch basin placed in the center

of a street, has the right to assume that it is securely fastened in position, that his horse's foot will not become fast therein, and that the wheel of his vehicle will not throw it from its position, and thus render him liable to be injured by the wheel falling into the opening. And we are of opinion that, in using coverings of this character for catch basins, appellant was negligent, and this is especially true, in view of the evidence in this case to the effect that the superintendent of streets had seen this very covering pulled from its position, as he says, by the cork of a horse's shoe having become fast therein. Where a city places catch basins in its streets, it owes to the traveling public the duty of so fastening the coverings to such basins that they may be passed over with safety; and when notice is brought home to the city that the covering to one of these basins is defective or loose, so that it is liable to be pulled from its position by the cork of a horse's shoe having become fastened therein, or knocked from its position by being struck by the wheel of a heavy vehicle, and the city permits it to remain in this condition, without making an effort to remedy the trouble, it does so at its peril.

It may be argued that notice of the fact that, but a single accident of this character had occurred, would not be sufficient evidence of a defective condition of said covering, but we are unwilling to draw a distinction between a notice of a defect in the covering to a catch basin and a defective condition of the street in any other particular. Indeed, if a distinction is to be drawn, it should be rather against such a contention, because, in the case of a covering to a catch basin, the defect is not open and apparent, and, on this account, the danger, or liability to injury, is greater than it would be, were the defect one that could be seen. Nor is it material that the city authorities, charged with the supervision of its streets, regard the grating as a safe, suitable, and proper covering for this opening. It is not what they thought; but, was it, in fact, suitable? The city knew that this grating or covering had been pulled from its position, and it must have known that, under similar circumstances, it would or could be so removed again, and that accident was liable to follow such removal, and it cannot excuse itself from liability by saying that it regarded it as a suitable covering for the catch basin. Clearly, it was not suitable when it failed to protect the traveling public against injury. Had it been suitable, it could not have been pulled

from its position by the cork on a horse's shoe having become fast in the bars thereof, nor would the wheel of a vehicle have knocked it from position.

In McCourt v. City of Covington, 143 Ky., 484, a recovery was sought for injury resulting from a fall alleged to have been due to the negligent construction of the covering to a catch basin. Recovery was denied, because the evidence showed that the covering was made of good material and held or kept firmly in place. This is the true test to apply to cases in which this question arises. The city authorities are clothed with power to determine where catch basins shall be located, how they shall be built, and of what material coverings thereto shall be made. So long as catch basins are constructed upon reasonable grades, the coverings thereto made of substantial material and held firmly in place, the city cannot be charged with negligence, either in their construction or maintenance. They are intended to prevent persons from falling into the catch basins. It would be useless to require that they shall be made of good, substantial material, if the city was not further required to see that they were firmly kept in place, for, in that way only can they afford the protection for which they were intended. The covering in question was undoubtedly sufficient for the purpose for which it was intended, so long as it remained in place, but it was wholly insufficient for that purpose when it was so constructed, or fitted, to the mouth of the catch basin that it could be either pulled or knocked therefrom, in either of the ways above indicated; and the city cannot excuse itself from liability under the claim that it regarded it as sufficient, or that similar coverings to catch basins are used in other parts of the city and found to be satisfactory, for, with notice that it had been pulled or knocked of, it was incumbent upon it, in order to excuse it from liability, to remove the defect or correct the evil in its construction. As well said in Hinckley v. Somerset, 145 Mass., 326, notice of a defect is notice of that condition of things which constitutes a defect, although the authorities of the town may think that it does not constitute a defect. It is apparent that the covering to this catch basin either was or was not sufficient for the purpose for which it was used, without regard to what the city authorities thought of it, and, upon the showing that it had frequently, during the interval of four or five months, prior to the accident complained of, been pulled or knocked from its po-

sition by horses and vehicles passing over it, the court properly held that it was a question for the jury to say whether or not, under the circumstances, the city was negligent in suffering and permitting it to remain in that condition, after notice of its defective or dangerous condition had been brought home to it.

Several minor errors are complained of, among which may be noted the objection to the instructions given by the court. It is insisted that he erred in failing to point out to the jury what officers of the city should have notice of the defective condition of its streets, in order to bind it. In Harrodsburg v. Sallee, 142 Ky., 829, we said that the mayor, members of council, chief of police and superintendent of streets would be such persons. The instructions were defective in this particular, but, inasmuch as the evidence showed that the superintendent of streets had notice of the defect in this sewer drain covering, which resulted in the injury, appellant was not prejudiced in any wise, by reason of the failure of the court to specify, in his instructions, the persons to whom such notice should be brought home; for, had he done so, there would have been included among them the superintendent of streets. The fact that the jury may have regarded notice to other employes of the city, to-wit: the fireman and stable boss, as notice to the city concerning the defective condition of this covering, is immaterial, for they had the admission of appellant's superintendent of streets that he knew of this condition, and notice to him was all that was required. So that, when the court, in his instructions, told the jury that, if notice of this condition was brought home to the officers of the city, the city was bound, it was, in no wise, prejudicial.

Several instructions were asked for by counsel for appellant and refused, and objection was made to practically all of the instructions given by the court, but, upon consideration, we are of opinion that, subject to the exception above noted as to the officers to whom the notice should be given, these instructions are not objectionable and clearly present the issue, as made by the pleadings, and are supported by the evidence.

Perceiving no reversible error, the judgment is affirmed.