## Armour & Company v. City of Louisville.

(Decided March 9, 1926.)

### Appeal from Jefferson Circuit Court.

Municipal Corporations—City Held Not Liable for Damage to Truck from Defect in Street, Due to Break in Sewer, where it had no Actual or Constructive Notice of Defect.—Where truck broke through pavement, falling into sewer, which had been built for 50 years and last inspected a year before accident, but it was not shown that city had either actual or constructive notice of defect, court properly instructed verdict for city, in action for damages to truck.

LEO T. WOLFORD, HELM BRUCE and BRUCE, BULLITT, GORDON & LAURENT for appellant.

JOSEPH E. CONKLING for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

On June 8, 1922, two of Armour & Company's employes drove a five-ton truck with a load of about 3,000 pounds on it from the Ohio river up Fourth street. As Fourth street approaches Main there is a considerable incline. When the truck reached a point about 100 feet from Main street the street gave way and the front part of the truck plunged into the hole to a depth of about twelve feet. The truck was seriously damaged by the

fall, and this action was brought by Armour & Company against the city of Louisville to recover for the injury to the truck. At the conclusion of the evidence on both sides the circuit court instructed the jury peremptorily to find for the city. Armour & Company appeal.

The proof showed these facts: Fourth street at this point was paved with brick. There were no indications of any trouble on the surface of the street. This truck and many others like it passed over the street often up to that time without trouble. There was a sewer under the street and what happened was that the sewer gave way and the truck fell into the sewer. The sewer was built in 1865; it was a brick sewer, circular in form with a four-inch wall. It had been inspected a year before, but there had been no inspection of it for a year, and nothing had occurred suggesting the necessity of an inspection. The sewer extended about four or five squares south of Main street, and carried off all the water from this area coming from rainfall or waste water. This was a very densely built up part of the city. South of Main street the sewer was five feet in diameter, but at the point where it fell in it was only three feet in diameter. The reason for making it smaller at that point was that the water going down the incline would run more rapidly and did not need so much space as where the fall was not so great. The sewer had been in use since it was built and had never given any trouble in all that time. That evening about four o'clock there came a very heavy rainfall in Louisville, the heaviest that had ever fallen in fifteen minutes since the weather bureau was established. The fact that the district drained by the sewer was closely built up made all this water run into the sewer soon after it fell, for it would be taken directly from the roofs by the gutters and by the gutters to the pipes leading to the sewer. What apparently happened was that this sudden rainfall overcharged the sewer and the pressure of the water from above weakened the wall of the sewer so that when the truck came up it gave way and the truck fell in. The question is, was the city answerable for the injury to the truck?

"The duty of a city to repair a defect in a street arises only after actual notice of its existence, or after such a lapse of time as would justify the imputation of negligence, if the defect had not been discovered." Louisville v. Lenehan, 149 Ky. 540.

In Rochefort v. Attleborough, 154 Mass. 140, 26 Am. St. R. 223, the court thus stated the rule on the subject:

"There was, however, no evidence that the hole which caused the injury to the plaintiff had actually existed for any such length of time before the accident as to make the town chargeable with notice thereof, and there had been no hole in the road at that place for more than a year previously, although there was much heavy travel over the road, and one of the plaintiff's witnesses went so far as to testify that he had himself driven heavy loads across there thousands of times. Under such circumstances, although the culvert was not so well built as to be likely to stand many years without repairs, it could not properly be held that the danger of a subsidence of the road was so imminent as to warrant holding the town chargeable with actionable neglect. It would throw too heavy a burden upon towns for the court, without more explicit legislation looking to that end, to hold them responsible merely because a road is so constructed that a defect therein of this character is likely to occur in the remote future. There was no apparent probability that the culvert would break down all at once, and without previous warning, thus making it dangerous to pass over it at all."

Again, in Stoddard v. Winchester, 154 Mass. 149, 26 Am. St. R. 223, which was a like case, the court thus stated its reasons for a peremptory instruction to the jury to find for the city:

"In order to hold a town responsible on the ground of implied notice of a defect in the road, there should be such a condition of things as fairly to indicate that there may at any time be danger in using the road. It is not necessary that roads should be built according to the highest standards of engineering; and the practical rule that must be adopted in order to impose liability in such cases is, that the condition of the road must be such that danger may reasonably be apprehended at any time, and therefore ought to be guarded against."

In the notes to these cases a number of other cases are collected sustaining the rule they announce. To the same effect see Farrell v. New York, 99 N. Y. S. 947; Miller v. North Adams, 66 N. E. 197.

Referring to a previous opinion this court, in Richmond v. Hill, 195 Ky. 568, thus stated the rule:

"The rule with respect to liability for injuries caused by defective streets is correctly stated in that opinion; it is that where the injuries are caused by a defective street in the absence of actual notice of such defect or unless the defect has existed so long that notice or knowledge of it can be imputed to the city, there is no liability."

There was no evidence that there was any apparent defect in the street before the truck fell in. This truck and others like it had passed over the street many times for years, and nothing was apparent giving any indication that there was a defect in the street or in the sewer underneath. It is true the sewer had been built over fifty years, but it had been inspected about a year before and was then found in good condition. Nothing was shown evidencing probable danger of a subsidence of the street and there was no evidence that the defect had existed so long that notice or knowledge of it should be imputed to the city. The court, therefore, properly instructed the jury to find for the defendant.

Judgment affirmed. Judge Dietzman not sitting.