## City of Danville et al. v. Vanarsdale.

(Decided March 11, 1932.)

CHENAULT HUGUELY and EMMETT PURYEAR for appellants.

HENRY JACKSON and C. E. RANKIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Between 7 and 7:30 p. m., on July 23, 1929, the appellee and plaintiff below, Lottie Vanarsdale, was walking on the concrete sidewalk along the west side of Maple avenue in the city of Danville, Ky. To her right and abutting on that street was located the Maple Avenue school, with its playgrounds. In the grass plot between the walk she was traveling and the west curb of the street was a fire hydrant to which was attached a fire hose, and from thence it ran across the walk into the school grounds. Plaintiff stumbled over it and fell upon the pavement, whereby she sustained severe injuries, principally to her kneejoint, which produced great pain and suffering, and necessitated the expenditure of a large sum for medical and hospital fees, with the possibility of her becoming a permanent cripple. The city owned and operated its waterworks plant, and Mrs. Vanarsdale filed this action against it and its board of councilmen, who are appellants here and were defendants below, to recover damages for her injuries upon the ground that the city through its authorized agents and servants had rendered the walk upon which she was traveling unsafe by leaving the hose across it, and that the city had thereby failed to discharge its duty in keeping such ways in a reasonably safe condition for travel.

The answer denied the alleged negligence, as well as some material facts constituting its liability. It also pleaded contributory negligence, and further sought exoneration upon the ground that the use of the hose at that particular time and place was in the discharge of a governmental function, i. e., the free furnishing of water

upon the school grounds to maintain a shower bathing contrivance for the recreation and sanitary cleansing of school children in the afternoons of the summer vacation, and which undertaking began on the playgrounds on that day, with the consent of the school authorities and to be continued throughout the school vacation period. Following pleadings made the issues and upon trial, the jury, under the instructions given it by the court, returned a verdict against defendants in the sum of $8,000, which the court declined to set aside on their motion for a new trial, and from the judgment rendered thereon they prosecute this appeal. The material facts are practically admitted by both sides, which makes the questions argued and submitted to us purely law ones, and which are: (1) Whether the city is liable because of its alleged negligent failure to maintain the involved sidewalk reasonably safe for travel, and (2), whether under the facts it is liable as owner of the waterworks under the doctrine of respondeat superior? They will be answered in the order named.

1. Prior to 1926 Henry E. Woolfork was the duly elected managing superintendent of the city waterworks plant, and he in turn was under the direction and control of a water committee composed of three members of the city council. After his death in that year, J. E. Pollitte became the acting superintendent under the direction and control of the water committee, but it appears that he was never formally elected to that place, though he continued to discharge its duties, and was so acting at the time of the involved accident. Some public spirited citizens conceived the idea that it would contribute to the health and recreation of the school children of the city to maintain a playground during the summer vacation on the campus of Maple Avenue school property, and with that in view they provided swings and contrivances for developing exercises, and to which they concluded to add a temporary contrivance whereby the children could obtain shower baths. To that end they applied to the acting superintendent of the waterworks system to know if free water for that purpose would be furnished. He consulted individually the members of the water committee, but not collectively; nor did they take any formal action on the matter. However, they did consent for the water to be furnished for the purpose indicated, free of charge, but they neither directed, nor consented to, any particular method of supplying it.

On the day of the accident, which was the one upon which the summer recreation exercises were to begin, a colored laborer in the employ of the waterworks company attached a fire hose to the hydrant hereinbefore referred to, and carried it across the walk that plaintiff was traveling and into the school grounds for the purpose indicated. The other end was attached to the sprinkling contrivance, and a test was made to prove whether it would properly function. It seems to have been left in that condition for something like five hours, when plaintiff received her injuries as hereinbefore indicated. The proof shows uncontradictedly that neither the mayor of the city nor any one having any connection whatever with the maintenance of the streets and sidewalks therein, had any knowledge of the contemplated purpose to be served, or that the hose had been so placed for the accomplishment of that purpose, and they did not learn of such facts until after the accident occurred. Our task is to determine whether the action is maintainable under the outlined facts upon either of the grounds, supra.

It is conceded that the law in this jurisdiction, as well as in some of the other states, is, that since municipalities and other local governmental agencies perform governmental duties within their territorial limits, they are not liable for negligence in the discharge of governmental functions within their jurisdiction, except in the one instance of maintaining the public streets, sidewalks, and ways in reasonably safe condition for travel, and that for a failure to do so they must respond in damages to the one sustaining them by reason of such failure. Even that exception does not apply in this jurisdiction to counties, but only to municipalities coming within the classification of cities and towns. Perhaps a majority of the states of the Union do not recognize that exception as to such public corporations, and it is difficult to find a perfectly logical and satisfactory reason for its adoption in jurisdictions where it prevails. However, its longstanding has so firmly fixed it as a settled principle with us that it is now accepted without question. To render a city liable for dangerous conditions for travel of its streets and sidewalks, some officer or agency of the city having in charge their maintenance must have knowledge of the unsafe condition, or it must have existed for such a length of time as that knowledge of it

could have been obtained by the exercise of ordinary care.

Such requirements are conditions precedent to liability, and are as old as the exception imposing liability, and it would render this opinion too long to insert all of the cases and text authorities in substantiation thereof. Two late cases in which many others are collected so holding are: Wyatt v. City of Henderson, 222 Ky. 292, 300 S. W. 921, and City of Georgetown v. Red Fox Oil Co., 228 Ky. 599, 15 S. W. (2d) 489. In the Wyatt case members of the fire department of the city of Henderson, in the discharge of their governmental duties of keeping the streets and sidewalks in a clean and sanitary condition, washed off one of them with a fire hose attached to a fire plug, and the water so put upon the streets soon froze, causing it to become slick and difficult to walk upon. Wyatt, the plaintiff therein, fell upon the ice, thus producing and sustaining the injuries for which he sought recovery in that action. But we held that the city was not liable, because the firemen who did the sprinkling had no duties to perform in the maintenance of the safety of the streets for travel, and that they were engaged in the performance of a governmental function for which the city was not liable because of the danger thus produced by the freezing water that was so put upon the streets, it not being shown that any one whose duty it was to look after the safety of the streets knew of such condition, and it having been so recently created as that knowledge could not be imputed from the want of the exercise of ordinary care to discover it, and which latter was based upon the rule announced in the cases of Bell v. City of Henderson, 74 S. W. 206, 24 Ky. Law Rep. 2435; City of Louisville v. Lenehan, 149 Ky. 537, 149 S. W. 932, Ann Cas. 1914B, 164; Armour & Co. v. City of Louisville, 213 Ky. 470, 281 S. W. 465; and City of Harrodsburg v. Sallee, 142 Ky. 829, 135 S. W. 405. The Georgetown case is to the same effect.

In the Bell case the conditions producing the unsafety of the public walk had existed for something near 24 hours, and it was held that such brief time was not alone sufficient to impute notice of the defect to the proper city authorities, while in the Lenehan case three hours' continuance of the defect was held insufficient to impute knowledge on the part of such city authorities through the exercise of ordinary care, and from which

we deduce that five hours' continuance of the obstruction, as in this case, is also insufficient for that purpose.

As hereinbefore indicated, perhaps a majority of courts, upon apparent sound reasoning, disallow liability of the municipality under the exception to the general rule denying liability for negligence in the performance of governmental functions, and such reasoning is upon the general principle that there is no greater reason for the exception in the case of the maintenance of streets and public ways than for the exception to prevail and liability attach for negligence in the discharge of any other public or strictly governmental function. On the contrary, such courts reason that the public policy denying liability of municipalities for negligence in the performance of governmental functions intrusted to their local jurisdictions does not call for an exception in the case of streets and sidewalks or other public ways, and that to uphold liability followed by the financial obligations imposed thereby creates the necessity for burdensome taxation to be followed by consequences more objectionable than would result from a disallowance of liability in such excepted cases. Such reasoning cannot fail to have the effect of admonishing us that the present limitation of liability in such cases should not be extended, but rather should be confined to those heretofore placed upon it.

But it is argued by plaintiff's counsel that the city in this case not only put the obstruction on the sidewalk through and by its waterworks manager and employees, but also that notice of such obstruction to them was notice to the city, and that the latter is liable under the limitations heretofore placed upon the exception to the general rule whereby liability is created. That argument, however, overlooks the reasoning of the Wyatt and other cases upon which it was based, to the effect that notice to the city must be to one upon whom (or in connection with others) is imposed the duty to maintain the streets and walks in a reasonably safe condition for travel. None of the waterworks employees or its managing officers had any duty whatever to perform with reference to the safety of the streets of Danville, and, that being true under the doctrine of the Georgetown, Wyatt, and other cases cited therein, notice to them was not notice to the city, any more than notice to a policeman whose duty is to preserve the peace and good order of the city would be notice to the latter of the condition of one of its streets

or sidewalks. See also, City of Newport v. Zimmerman, 152 Ky. 582, 153 S. W. 969. There can be no sound distinction drawn between notice to a policeman, or to a member of the fire department, as in the Wyatt case, supra, and notice to a manager or employee of the wholly independent undertaking of operating a city waterworks system. We therefore conclude that the city of Danville, under the facts of this case, was not liable in failing to discharge its obligation to maintain the walk where plaintiff was traveling in a reasonably safe condition, because of the presence of the hose across the sidewalk and which caused her to fall.

2. But it is argued in affirming question (2) that the city in maintaining its waterplant embarked in a private enterprise, or at least in only a quasi municipal one from the operations of which it received profit, as pointed out in the Wyatt and other cases, and that the doctrine of respondeat superior applies to it and renders it liable in this case for the acts of its managing agents and employees in the discharge of their duties in managing that plant, and that, since they put upon the sidewalk the obstruction that produced plaintiff's injuries, the city should respond in damages therefor. In support of that argument, many cases from this court are cited, among which are: City of Mayfield v. Phipps, 203 Ky. 532, 263 S. W. 37; Flutmus v. City of Newport, 175 Ky. 817, 194 S. W. 1039; City of Harrodsburg v. Sallee, 142 Ky. 829, 135 S. W. 405; City of Owensboro v. Knox's Admr., 116 Ky. 451, 76 S. W. 191, 25 Ky. Law Rep. 680; City of Louisville v. Hans, 167 Ky. 160, 180 S. W. 65; Gatewood v. City of Frankfort, 170 Ky. 292, 185 S. W. 847, and Gaines' Admx. v. City of Bowling Green, 235 Ky. 800, 32 S. W. (2d) 348.

An examination of those cases will disclose that the city employee, when he committed the negligent act, as a result of which the accident happened (and for the consequences of which the city was sought to be made liable), was performing a duty within either the express or apparent scope of his authority as such agent or employee. An illustration of that statement is found in the Sallee case, wherein the negligent act consisted in the placing of dirt upon an adjacent sidewalk by the side of which the employee of the city waterworks, under the direction of the superintendent, had dug a hole to replace a fire hydrant. The injuries therein to the plaintiff

were sustained by reason of the dirt thrown upon the sidewalk, and which obviously was done by the employee while engaged in his duties as such, and for whose acts in so doing the city was held liable under the respondeat superior doctrine.

The manager or acting superintendent of defendant in this case, as well as the employee who actually put the fire hose across the walk at the place where plaintiff was injured, were acting outside of any duty to the city in the management of its waterworks plant either expressly given or within the scope of their employment. The only function to be performed by the construction and operation of the city waterworks plant were (x) the furnishing of water for the extinguishment of fires, and (y) furnishing to citizens and patrons water for domestic any other purposes for which compensation at regular rates was charged.

The gratuitous furnishing of free water for the proven undertaking in this case by the purely accommodating and voluntary actions of such agent and employee, as well as all acts of theirs looking to the accomplishment of that purpose, including means and methods, was outside of and beyond their authority, and to hold the city liable for all consequences resulting therefrom would be a most dangerous rule to engraft on the present limitations of municipal liability in such cases. As well might the city be held liable for consequences growing out of a voluntary and gratuitous effort on the part of such agents and employees to divert the uses of the water from the waterworks system to any free and charitable purpose that they might deem beneficial to the community, or to the particular undertaking attempted to be served.

In no event should the rule of respondeat superior apply to any greater extent to a municipality when it is the master than to a private corporation, or an individual occupying that relation, and it would be a new and a strange doctrine to hold the latter liable as master when his or its servant departed from the performance of the duties of his employment and undertook the accomplishment of a purpose wholly outside of the results intended to be reaped by the prosecution of the particular enterprise. In such a case, the departure by the agent or servant in the prosecution of his master's business, in the usual and customary way, for the accomplishment of the particular undertaking, would be an individual act on

his part wholly outside of, and disconnected from, the duties of his employment, and for the consequences of which his master would in no wise become liable. The distinction between such a case and one where the agent or servant is acting within the scope of his authority so as to bind his master is broad and easy to mentally discern by the trained professional mind, but it is somewhat difficult to express in words in some states of facts. The other cases relied on by learned counsel for plaintiff, upon analysis, will be found equally as nonapplicable as in the Sallee case, in which the municipality was held liable upon a principle based upon facts entirely different from those appearing in this record.

We feel that it would not be an impropriety at this juncture to say that we deeply sympathize with the plaintiff, but our duty to apply the law to the facts of the case compels a submergence of any such feeling, and calls for a declaration of the rights of the parties in accord with fundamental principles governing such situations. It is therefore our conclusion that the facts of the case fail to establish liability against the city of Danville, and its motion, joined in by its board of councilmen, for a peremptory instruction to find for them, should have been sustained, and which the court will do on another trial, if the facts are substantially the same.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial and to set it aside and for proceedings consistent with this opinion.