## City of Clifton v. Means.

(Decided Dec. 3, 1935.)

REUSCHER & REUSCHER for appellant.

J. B. MEADOWS and L. J. CRAWFORD for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellee, Mrs. Anna Means, recovered a $1,000 judgment against the appellant for damages to her property caused by the removal of its lateral support in repairing or regrading a street.

The action is based upon negligence. The appellant argues that its demurrer to the petition should have been sustained, since a municipality is not responsible for a tort committed in repairing or constructing a street as that is performing a governmental function. In this state, a county is not responsible for negligence in building or maintaining a highway, although it is liable for taking or invading property if done pursuant to such a purpose and for damages if same was incident to or resulted from such taking, under the constitutional inhibition against taking the property of another without compensation. Barass v. Ohio County, 240 Ky. 149, 41 S. W. (2d) 928; Adkins v. Harlan County, 259 Ky. 400, 82 S. W. (2d) 425. A different rule is applied to cities. From an early date, it has been consistently held, in accordance with the authorities generally, that a city is liable for damages to or an invasion of property in constructing, regrading, or maintaining its streets, whether caused by negligence or not. This is under the view, as often expressed, that such service is not performing a governmental function. City of Louisville v. Hegan, 49 S. W. 532, 20 Ky. Law Rep. 1532; City of Hazard v. Combs, 229 Ky. 222, 16 S. W. (2d) 1022; City of Danville v. Vanarsdale, 243 Ky. 338, 48 S. W. (2d) 5; City of Ashland v. Queen, 254 Ky. 329, 71 S. W. (2d) 650. The demurrer was properly overruled.

Appellant's motion and grounds for a new trial are so indefinite and general as to deprive it of the right of review of several questions raised and to confine us to

the challenge of the sufficiency of the evidence to support the verdict.

We do not have the benefit of a plat as a diagram was made on a blackboard. Notice should be taken of section 11, rule III, of this court concerning such exhibits. As we visualize the situation from the testimony, the street, "Overlook Drive," runs on the side of a hill. It had a nine-foot worn-out macadam roadway. On the upper side, in front of appellee's property, there was a gutter made of rock placed on edge. Between it and a retaining wall on appellee's property line, there was a three-foot strip of turf. About twelve feet beyond that and about eight feet higher was a dwelling. The foundation in front was so high as to make the basement practically above ground, but at the back of the house the first floor was only a little above the surface. This house of five rooms was built about twenty-three years ago. In 1914, it was completely repaired and the cracks in the foundation were closed. At that time heavy buttresses were built to brace the front foundation and since then there had been no cracking or sagging. Before, or at that time a retaining wall was built across the front of the lot. Its builder testified that it was of re-enforced concrete with a three-foot or wider base eighteen inches below the surface, and with four feet extending above ground. It was inclined toward the hill so as better to prevent slipping. While some of plaintiff's witnesses indicated that the wall and the house had not been maintained in perfect condition, as the plaintiff testified, it is made certain by all of them that the work on the street undermined this retaining wall so that it fell over and was practically destroyed. This caused the upper ground to slide and ruin the paving and steps and to crack the foundation and cause the subsidence of the house so as to render it uninhabitable. About this time the city authorities condemned the property as being dangerous. It is related that the city workmen removed the gutter and lowered the edge of the street grade about eighteen inches.

The evidence in behalf of the city could hardly have been more directly opposed. The city engineer testified that before this street repairing was undertaken the house had been condemned because of its bad condition. He and others testified that the retaining wall was a flimsy affair, much out of line and ready to fall over. The evidence for the city is also to the effect

that this entire hillside is of clay, resting upon soapstone, and that it has continually gravitated and thereby damaged this and other buildings. The appellee's house for many years had been cracking up, due in part to broken gutters and downspouts and the drainage from the kitchen sink seeping under the foundation. The repair of the street had consisted only of removing the rock gutter which was projecting six inches above the surface of the street. There was no excavation or anything done to remove the lateral support of the retaining wall. The roadway was surfaced twelve feet wide with crushed stone and that was all the work done.

The jury viewed the premises and doubtless came to the conclusion that the real situation was somewhere between the extremes of evidence. Accordingly, it returned a verdict for $1,000 instead of $1,800, the only sum fixed in the evidence as being the estimated cost of restoring the building and wall to the condition they were in before the street was repaired. By no means can it be said that the verdict is not sustained by the evidence.

Judgment affirmed.