CITY OF DAYTON, Kentucky, Appellant,

v.

Richard A. THOMPSON, Appellee.

Court of Appeals of Kentucky.

Nov. 8, 1963.

Davies & Hirschfeld, Newport, Charles E. Graham, Dayton, for appellant.

A. J. Jolly, Newport, for appellee.

PALMORE, Judge.

The appellee Thompson was injured when he fell into an excavation while walking at night on a public sidewalk in front of the home of one Ryder and wife in the city of Dayton, Kentucky. In his ensuing action for damages a jury trial resulted in a $6,000 verdict and judgment against the city and the Ryders. The city appeals, claiming (1) the excavation had not existed long enough to sustain a case of constructive notice and (2) Thompson was contributorily negligent as a matter of law.

The accident happened near 10:00 P.M. on May 22, 1957. Thompson's wife's niece, Janice Byland, who lived next door to the Ryder house, graduated from high school that evening, and a number of her friends and family, including the Thompsons, had been invited to the Byland home after the ceremonies. When Thompson drove up, there were several other cars parked along the curb in front of the Byland and Ryder houses and, as it was drizzling rain, Thompson stopped his car in the middle of the street in front of the Byland house long enough to let his wife and her mother and sister out and then proceeded several car lengths farther on, past the Ryder home, and parked. As he walked rapidly back toward the Byland house along the sidewalk he fell into a hole where Ryder had removed one section of the concrete walk and excavated to a depth of 2½ to 3 feet in order to install a new water pipe.

The sidewalk abutted the curb and was variously estimated as 2½ to 4 feet wide. It was partially obstructed by the overhang or outward growth of a parallel hedge in the Ryder yard. At the time of the accident the cars parked alongside the curb obstructed the light of a street lamp located several doors up and on the other side of the street, so that the excavation lay within the shadow. Ryder said he had placed two lighted lanterns at or near the hole during the afternoon, but Thompson's witnesses testified that there was no light there at the time of the accident. Mr. Byland, for example, said that when he left home at about 7:45 P.M. to attend the graduation he saw a lantern on the sidewalk and noticed it was unlighted. Later, he warned several of his guests as they drove up, but had gone inside when Thompson arrived. Thompson had no notice or knowledge of the condition of the sidewalk. Byland examined the lantern after the accident and found the wick so turned down that it would not burn.

Ryder testified that he broke up the concrete on Sunday, May 19, 1957, 3 days prior to Thompson's mishap. There was other evidence, however, from which the jury could have believed that the hole was there as early as Friday morning, May 17, in which event it would have been manifestly visible during the daylight hours of 6 consecutive days preceding nightfall of May 22.

The city had no actual notice of the dangerous condition until after the accident. Ryder had not complied with a city ordinance requiring a permit and cash security deposit for cutting into a street or sidewalk.

"To render a city liable for dangerous conditions for travel of its streets and sidewalks, some officer or agency of the city having in charge their maintenance must have knowledge of the unsafe condition, or it must have existed for such a length of time * * * that knowledge of it could have been obtained by the exercise of ordinary care." City of Danville v. Vanarsdale, 243 Ky. 338, 48 S.W.2d 5, 7 (1932).

"No undeviating rule can be established as to the precise length of time a defect must have continued to justify the presumption of knowledge in time to have remedied it prior to the injury. * * *

In other words, each case must depend on the facts peculiar to it. * * * In determining what length of time will impute notice, regard should be had to * * * the apparent danger, whether very dangerous as apparent to everyone or merely a possible but not probable source of danger, etc. For example, if one should dig a deep ditch across a sidewalk and in no way guard the excavation, so that every person would be obliged to go around the ditch or step over it, the danger is so great that a very few days' time would impute notice to the municipality." McQuillin, Municipal Corporations, § 54.110 (Vol. 19, pp. 403–406).

KRS 94.360 provides that the legislative body of 2nd to 6th class cities, inclusive, "shall, by itself or through a department of public works or a superintendent of public works as provided by law, have and exercise exclusive control over the public ways * * * of the city." On the theory that notice to the public works department would constitute notice to the city, Thompson introduced evidence (without objection) tending to show that the excavation on the sidewalk must have been seen by the garbage collectors employed by that department when they made their regular collection at the Ryder home on Monday, May 20, 1957. The city countered by showing that *inspection* of the sidewalks was the assigned responsibility of its police department, and not the public works department.

■■ We need not determine whether inspection of the sidewalks was a nontransferable duty of the public works department under KRS 94.360. In either event, the garbage tippers were not inspectors. They were subordinate employes whose duties were not related to the condition of the sidewalks. Knowledge of one not charged with the duty of inspecting or repairing the public way is not imputable to the city. Wyatt v. Henderson, 222 Ky. 292, 300 S.W. 921, 923 (1928); City of Danville v. Vanarsdale, 243 Ky. 338, 48 S.W.2d 5, 7 (1932).

■ On the other hand, the city ordinance requiring a permit for cutting into the sidewalk had the effect of making it a violation of law to do so without a permit. The detection of law violations being a primary function of the police department, the manifest presence of an excavation in the sidewalk charged that department with the duty of investigating to learn whether an appropriate permit had been granted.

■ Dayton is a small city running 10 blocks in one direction and 8 to 13 blocks in the other. A police cruiser covers the entire area once every hour. An officer driving past the Ryder home could hardly have failed to have his attention drawn at some time during the several days prior to the night of May 22, 1957, to the pile of fresh dirt in the Ryder yard and the opening in the sidewalk beside it. The evidence was clearly sufficient to authorize a finding that in the exercise of ordinary care the city should have discovered the dangerous condition and taken steps for the protection of pedestrians on the sidewalk before the night of May 22, 1957.

The facts of Eagan v. Covington, 166 Ky. 825, 179 S.W. 1026 (1915), on which the city strongly relies, are distinguishable. The accident in that case occurred in the daytime and resulted from a circumstance that "did not make the sidewalk dangerous until the day on which the accident occurred." No violation of a city ordinance was involved. City of Catlettsburg v. Sutherland's Adm'r., 247 Ky. 540, 57 S.W. 2d 512 (1933), in which it was held that notice to the police of a defective condition in the public ways ordinarily is not notice to the city, likewise did not involve any active violation of law. Cases in which the police had some consequential responsibility have held to the contrary. See City of Louisville v. Lenehan, 149 Ky. 537, 149 S.W. 932, Ann.Cas.1914B, 164 (1912); City of Louisville v. Carr, 204 Ky. 119, 263 S. W. 674 (1924).

■ ■ Thompson and his witnesses testified that there was no light or other device

to warn him of the presence of the excavation. There was a large tree between it and the porch light of the neighboring Byland residence. Illumination from the only street light within any reasonable proximity was cut off by the automobiles parked next to the sidewalk in question. The night was dark and a light rain was falling. Thompson was walking rapidly, as he had reason and right to do. These were the facts the jury was authorized to believe from the evidence. We think it would be absurd to hold that Thompson was contributorily negligent as a matter of law.

The judgment is affirmed.